The United States, Appellants, *v.* John M. Hanson and Others, Appellees.

A Florida land claim. · A grant of five miles square, or sixteen thousand acres of land, was made by the Spanish Governor of East Florida, at the mouth of the river Santa Lucia. The petition for the grant stated various merits and losses of the petitioner, and asked the grant of five miles square, for the construction of a water saw-mill. The grant was given for the purposes mentioned, and "also paying attention to the services and other matters set forth in the petition." No survey under the grant was made by the surveyor-general of Florida; but a survey was made by a private surveyor. The survey did not follow the calls of the grant, and no proof was given that it was made at the place mentioned in the grant. The survey and plat were not made according to the established rules relative to surveys to be made by the surveyor-general under such grants. Nor was the plat made with the proportion of land on the river, required by the regulations. The Superior Court of Florida held that the grant having been made in consideration of services rendered by the grantee, as well as for a water saw-mill, it was valid, without the erection of the mill; but the survey was altogether void, and of no effect. The decree of the Superior Court of Florida, by which the grant and survey were confirmed, was remanded to the Superior Court of Florida; that Court to order the sixteen thousand acres granted, to be surveyed according to the principles stated in the opinion of the Supreme Court.

It has often been held that the authorities of Spain had the power to grant the public domain, in accordance with their own ideas of the merits and considerations presented by the grantee; and that the powers of the Supreme Court of the United States extend only to the inquiry, whether, in fact, the grant had been made, and its legal effect when made, in cases where the law by implication introduced a condition, or it was peculiar in its provisions. No special ordinance of Spain introduces conditions into mill grants.

Cited, Mrs. Wiggins's Case, 14 Peters; Sibbald's Case, 10 Peters.

The certificate of a private surveyor, that he had permission from the governor of the territory to make a survey of the land granted, is no evidence of the fact. There is a marked and wide difference in the effect of the certificate of the surveyor-general and of a private individual, who assumes to certify without authority.

Instructions of 1811, as to the duties of the surveyor-general, in making surveys under grants, by the governors of the public lands of Spain.

A grant by a Spanish Governor of Florida, meant not, as in the states of the United States, a perfect title; but an incipient right, which, when surveyed, required confirmation by the governor. The duty of confirmation by the acts of Congress, is deputed to the Courts of justice of the United States, in execution of the treaty with Spain.

The same credence that was accorded to the return of the surveyor-general, by the Spanish government, is due to it by the Courts of the United States. Plats and certificates, because of the official character of the surveyor-general, have accorded to them the force and character of a deposition.

ON appeal from the Superior Court of East Florida.

Samuel Miles, a new settler, admitted under the protection of the King of Spain, on the 18th of July, 1813, presented a petition to Governor Kindelan, the Spanish Governor of East Florida, setting forth great services performed by him for the supply of the troops of Spain, in the province, and severe sufferings and losses sustained by him in the service of the crown; and considering himself entitled to some favour, asked for a grant of five miles square of land, for the construction of a water sawmill, at a place fit for the purpose, and which is vacant, situated at the mouth of the river Santa Lucia.

The governor gave the following decree on the petition:

*St. Augustine, Florida, 19th July,* 1813.

Taking into consideration the benefit and utility that will redound to the province, from a machine for sawing lumber, which the party proposes to construct in the place which he points out, and also paying attention to the services and other matters which he sets forth, let there be granted to him the five miles square of land which he solicits, without injury to a better right; and in order to prove this grant, let there be delivered to him from the secretary's office, the necessary certified copy. KINDELAN.

On the 7th of May, 1815, a survey and plat of the land, was returned, with the following certificate:

I, Don Roberto M'Hardy, an inhabitant of this province, and private surveyor, do certify: That in consequence of a permission from this government, I have surveyed and delineated a square of five miles, containing sixteen thousand acres of land, which this government has granted to Don Samuel Miles, on the nineteenth of July, one thousand eight hundred and thirteen, which plat is represented in the preceding plot. St. Augustine, of Florida, on the seventh May, one thousand eight hundred and fifteen. ROB. M'HARDY.

On the 23d day of May, 1829, John M. Hanson, and others, the grantees of Samuel Miles, brought their petition before the Superior Court of East Florida, setting forth the grant to Samuel Miles, and their title under the same; and praying that the land, as surveyed by Robert M'Hardy, might be confirmed to them.

After various proceedings in the Court, at July term, 1840, a

R 2

decree was made by the Honourable Isaac H. Bronson, judge of the Superior Court, in favour of the claim, in conformity with the survey of Robert M'Hardy. From this decree, the United States prosecuted an appeal.

The case was argued by Mr. Legaré, attorney-general for the United States. No counsel appeared for the appellees.

The attorney-general contended:

1. That there never was any legal survey of the land, under the alleged grant: and that the survey of Robert M'Hardy, who was a private surveyor, was void for want of authority, even if proved to have been made; and could not sever the lands surveyed from the public domain.

2. That even if the said survey were made by legal authority, the land surveyed do not conform to the description in the said pretended grant, and the said survey is therefore void.

Mr. Justice CATRON delivered the opinion of the Court.

This was a grant to Samuel Miles, dated 18th July, 1813, for five miles square of land, or sixteen thousand acres, at the mouth of the river Santa Lucia.

The first question is, was the grant made in property and dominion, or was it made on condition that a water saw-mill should be erected? The petitioner sets forth various merits and losses, and asks the governor to be pleased to grant to him in virtue of these, the possession of five miles square for the construction of a water saw-mill, fit for the purpose, at a place that is vacant, at the mouth of the river Santa Lucia. The grant to be in lawful property and dominion.

The grant was made to the petitioner for the purpose of constructing the mill in the place pointed out: "and also (says the governor) paying attention to the services and other matters which he sets forth, that there be granted to him the five miles square of land which he solicits, without injury to a better right."

We have often held, that the authorities of Spain were authorized to grant the public domain, in accordance with their own ideas of the merits and considerations presented by the grantee:

[The United States v. Hanson.]

and that our powers extended only to the inquiry, whether in fact the grant had been made; and its legal effect when made, in cases where the law by implication introduced a condition, or it was peculiar in its provisions. Mrs. Wiggins's Case, 14 Peters. As no special ordinance introduces conditions into mill grants, we must construe the one before us by its own terms.

The party desired the grant for the purpose of building a saw-mill; so he represents, and we must take his statement to be true, as the concession in effect adopts it; and to this end sixteen thousand acres were granted, it being the usual quantity in such cases. The grant, however, is not founded on that consideration, although intended for that purpose. Meritorious services and losses are relied on; and the land was asked and granted, in lawful property and dominion, without any condition annexed to build the mill.

2. The second objection is to the survey. Its validity is put in issue by the answer; and its introduction was objected to when offered to be read on the hearing, because it had been made by a mere private surveyor; and because it did not follow the calls of the grant. The Court received the survey, and decreed the land laid off.

There was no proof that it was at the place granted, further than appears by the face of the plat and certificate: and we must inquire what credit ought to have been accorded to them by the Court. Mr. M'Hardy certifies that he was a private surveyor; and that he had permission from the government, whether general or special does not appear. His own statement is no evidence of the fact. And so it is in regard to his description of the land surveyed, which he certifies as lying at the place granted. There is a marked and wide difference in the effect of the certificate of the surveyor-general and a private individual, who assumes to certify without authority. What the duties of the former are is well known from the proofs in many cases presented to this Court. They, however, are set forth by the instructions of 1811. Land Laws, 1003, 1004. First, the grant must be presented; then the persons having adjoining lands to the place designated must be notified, that they may be present at the making of the survey, with their titles, so that there be no interference; the lands must be bounded by rectangular parallelograms; and fronts on rivers, navigable creeks, and public roads, shall not exceed one third of

the depth back: to each person, whose lands have been measured, a plat will be given, with the lines drawn in black ink; and when bounded by a river, creek, or swamp, (which is permitted,) a quantity will be added, or be deducted, maintaining the rectangular form on the other lines; the number of acres will be on the centre of the plot; and the scale one inch to four chains. The plat will be delivered to the grantee with the following inscription: " Plat of the number of acres of land, of A. B., in such a place, measured and bounded by the public surveyor of this province, Don George Clarke, East Florida; the day of the year and month, on the same tracts. George Clarke." " The surveyor will keep a book of large paper, and copy therein the plats he gives out; these plats will be numbered; the book will be indexed. At the end of the book he will have a sheet of sufficient size for a general plan, containing the surveys for individuals, with the number of each.

" The book will serve to show government what lands are vacant, or not measured; and he shall keep a journal to satisfy the persons having lands adjoining. The corners are to be marked with stakes, three inches diameter at the head; and the owners shall encircle them with oyster shells, two feet deep, and two feet diameter."

A grant delivered out for survey, meant not, as with us, a perfect title, but an incipient right; which, when surveyed, required confirmation by the governor. The duty of confirmation, by the acts of Congress, is deputed to the Courts of justice of the United States, in execution of the treaty with Spain.

The same credence, it follows, that was accorded to the return of the surveyor-general by the Spanish governor, before the cession, is due to it by the Courts of this country. The acts of the officer and the governor were both on behalf of the government; each by his duty was bound to protect the public domain, and to guard the law from violation: if the surveyor, therefore, by his plat and certificate returned that he had surveyed the land at the place granted, not by the assertion only that it was at the place, but by a description in legal form, that it was so; then the return was primâ facie competent evidence, without further proof, on which the governor could found the confirmation. Plats and certificates, because of the official character of the

surveyor-general, have accorded to them the force and character of a deposition: the same as Aguilar's certificate to a copy of the grant; as we held in the case of Wiggins, 14 Peters, 346.

In contrast to the official survey and return, how does this private one of Mr. M'Hardy stand? No proof was made that it was on the land granted; the certificate does not even so assert, and there is no plat in the record: did it, however, appear in the clearest manner on the face of the paper, it would be of no value. The private surveyor acted not for and with the interests of the government, but at the instance of the grantee; and for his interest, and against the government. The survey was a private act; the plat and certificate private papers, delivered to the grantee, of which no record was made in the surveyor-general's office; and of which the governor could take no notice, unless it was presented to him, and extrinsic proof made that it was for the land granted; and that it had been lawfully made in regard to navigable waters, roads, adjoining granted lands, and line marks. Then he could have ordered a perfect title to issue founded on the survey; as he did do in many instances on surveys of Mr. M'Hardy, and as this Court has done and would do on similar proof.

The decree of the Superior Court gives the lines and description of the survey, to wit: "five miles square of land situated at the mouth of the river Santa Lucia: the lines of the said survey thereof are as follows, to wit, the first line commences at a cedar tree marked M, on the bank of Indian river, and runs south sixty degrees, west four hundred chains to a pine marked M; the second line commences at said pine, and runs north thirty degrees west, four hundred chains to another pine marked M; the third line runs from said pine north sixty degrees east four hundred chains to a live-oak marked M, on the banks of Indian river; and the fourth line is formed and bounded by said river."

It is laid down in a square, with one side of four hundred chains on the Indian river. By the fourth instruction to the surveyor-general, (declaratory of the standing law of the province,) the front on the river could not exceed one-third of the longitudinal extension back. Land Laws, 1004. Nor does the description in the concession, "of five miles square," alter the rule prescribed by the general law. It had reference more to

26

quantity than form of survey; Sibbald's Case, 10 Peters: and was made on the assumption that no controling objects, such as rivers, would be either included or bounded upon; and if they were, that the general law would govern the survey.

The grant is for five miles square at the mouth of the river Santa Lucia; this is represented to be a fit place for a saw-mill, to supply timber for which the grant was made. We take it the place is on the side of the Indian river, to which the Santa Lucia is a tributary; and that the Santa Lucia is not navigable, or a mill would not have been permitted to obstruct it, of this, however, the governor had the right to judge; but we cannot suppose the survey was intended to include the Indian river; or to front on it one-third part. We, therefore, hold the concession carried with it the condition imposed by law, in regard to the form of the survey.

The decree is reversed, and the cause remanded to the Court below to be further proceeded in. That Court will order the sixteen thousand acres to be properly surveyed, according to the principles above stated; and found its decree of confirmation on the new survey.