### UNITED STATES v. BONNERS FERRY LUMBER CO., Limited.

(Circuit Court, D. Idaho, N. D.   December 5, 1910.)

PUBLIC LANDS (§ 51*)—UNSURVEYED LANDS—TITLE—LANDS RESERVED FOR SCHOOL PURPOSES.

Idaho Admission Act July 3, 1890, c. 656, § 4, 26 Stat. 215, reserved to the state sections 16 and 36 of every township, or other contiguous land in lieu thereof, for school purposes; and section 5 declared that all such lands should be disposed of at public sale, etc., should constitute a part of the permanent school fund and otherwise regulated its disposition. *Held* that, prior to an official survey, the title to land which, when surveyed, would constitute school sections in the several townships, remained in the United States; and hence, prior to such survey, the state could not grant any authority to remove timber therefrom, nor prevent the United States from recovering the value of timber so removed.

[Ed. Note.—For other cases, see Public Lands, Cent. Dig. § 138; Dec. Dig. § 51.*]

Action by the United States against the Bonners Ferry Lumber Company, Limited. On demurrer to defendant's answer. Sustained, with leave to amend.

C. H. Lingenfelter, U. S. Atty., and W. C. Henderson (Wm. M. Aiken, on the brief), for the United States.

D. C. McDougall and O. M. Van Duyn, for defendant.

DIETRICH, District Judge. This action is brought by the United States to recover from the defendant $2,523.36, stated to be the value of certain timber which it is alleged the defendant wrongfully cut upon and removed from certain unsurveyed lands in Northern Idaho, belonging to the government, and which will, when surveyed, constitute a part of section 36, in township 63 N., range 2 E. of Boise meridian. The defendant denies the extent of the cutting alleged, but admits that it did cut and remove a certain amount, which is stated in the answer, and sets up as a special defense that it did the cutting under a contract with the state of Idaho, and that the state of Idaho is the owner of the lands under the grant of what is ordinarily referred to as the Admission Bill (Act July 3, 1890, c. 656, 26 Stat. 215, 216), and especially of sections 4 and 5 thereof, which are as follows:

"Sec. 4. That sections numbered 16 and 36 in every township of said state, and where such sections or any parts thereof, have been sold or otherwise disposed of by or under the authority of any act of Congress, other lands equivalent thereto, in legal subdivisions of not less than one quarter section, and as contiguous as may be to the section in lieu of which the same is taken, are hereby granted to said state for the support of common schools, such indemnity lands to be selected within said state in such manner as the Legislature may provide, with the approval of the Secretary of the Interior.

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

"Sec. 5. That all lands herein granted for educational purposes shall be disposed of only at public sale, the proceeds to constitute a permanent school fund, the interest of which only shall be expended in the support of said schools. But said lands may, under such regulations as the Legislature shall prescribe, be leased for periods of not more than five years, and such lands shall not be subject to pre-emption, homestead entry, or any other entry under the land laws of the United States, whether surveyed or unsurveyed, but shall be reserved for school purposes only."

It is conceded by the government that immediately upon survey complete title to the lands vests in the state, if at the time of such survey the United States has not reserved or otherwise disposed of them; but it is vigorously insisted that prior to such survey the state acquires no vested interest, and that the United States may in the meantime reserve or otherwise dispose of the lands, if it sees fit so to do. Under this contention section 4 does not operate to consummate a transfer of title, but amounts only to a promise to grant when the lands are surveyed, a promise which the United States has in the meantime the power to withdraw. To the suggestion that such a view leaves the supposed rights of the state in a most unsatisfactory, if not precarious, condition, it is responded that, with the grant so construed, Idaho stands upon an equal footing with the other states, and that it should not be presumed that Congress will permit her to suffer any injustice by reason of the reservation or disposition of lands embraced in these sections, and in this connection attention is called to the provision of law authorizing a selection of lieu lands. The point is one of great importance; but, as I view the issues, its determination is not necessary to a proper disposition of the demurrer, and therefore no opinion is expressed thereon.

Even if it be assumed that the United States has not the legal right to convey the lands to third persons, or, by including them in reservations, permanently to withhold them from the state, it must be held at least that until the lands are surveyed it retains the legal title, and that the title of the state is therefore not complete. At most the state has but an equitable title, and until an official survey is made exact identification of the grant is impossible. It is therefore thought that the demurrer is ruled by the decision of the Supreme Court in United States v. Montana Lumber Manufacturing Company, 196 U. S. 573, 25 Sup. Ct. 367, 49 L. Ed. 604. That was an action brought by the United States against the defendant lumber company to recover the value of certain timber alleged to have been cut and removed by the defendant from unsurveyed lands, which, when surveyed, would be embraced in a section within the limits of the grant made by Congress to the Northern Pacific Railroad Company. The defense there relied upon was very similar to the defense set up in the present answer. While the lands from which the timber had been removed had never been officially surveyed by the government, they had been located by surveyors employed by the railroad company. The third section of the act granting lands in aid of the Northern Pacific Railroad Company contains the usual granting words: "That there be, and hereby is, granted to the Northern Pacific Railroad Company, its successors and assigns," etc.—language which, as will be observed, is similar

to that of section 4 of the act under consideration, and which, as was remarked by the court, has been frequently held to import a present grant. In the course of the opinion it is said:

"The equitable title becomes a legal title only upon the identification of the granted sections. Deseret Salt Co. v. Tarpey, 142 U. S. 241 [12 Sup. Ct. 158, 35 L. Ed. 999.] As expressed in Leavenworth, etc. Railroad Co. v. United States, 92 U. S. 733, 741 [23 L. Ed. 634]: 'They' (the words 'there be and is hereby granted') 'vest a present title, * * * though a survey of the lands and a location of the road are necessary to give precision to it, and attach it to any particular tract.' The right of survey is in the United States. It was error, therefore, in the trial court to admit the survey made by Ashley. It was also error to instruct the jury to return a verdict for the defendants. Until the identification of the even and odd numbered sections, the United States retained a special property, at least, in the timber growing in the township; and this was sufficient to enable it to recover the value of the timber cut and removed by the defendants. A contrary conclusion would impair the government's right of survey, and force it into controversies over surveys made by the railroad or its grantees. It would enable the railroad company or its grantees to despoil the lands of their timber, and leave them denuded, and maybe worthless, to the government. Indeed, it would reverse the statutory grant of powers, and transfer the location of the sections from the government to the railroad company. The extent and the effect of the power of the government to make its own surveys is expressed and illustrated in the following cases: Maguire v. Tyler, 8 Wall. 650 [19 L. Ed. 320]; Cragin v. Powell, 128 U. S. 691 [9 Sup. Ct. 203, 32 L. Ed. 566]; United States v. Mc-Laughlin, 127 U. S. 428 [8 Sup. Ct. 1177, 32 L. Ed. 213]; Blake v. Doherty, 5 Wheat. 358 [5 L. Ed. 109]; Central Pacific Railroad Co. v. Nevada, 162 U. S. 512 [16 Sup. Ct. 885, 40 L. Ed. 1057]; United States v. Hanson, 16 Pet. 196 [10 L. Ed. 935]; Les Bois v. Bramell, 4 How. 449 [11 L. Ed. 1051]; McKay v. Dillon, 4 How. 421 [11 L. Ed. 1038]; Glenn v. United States, 13 How. 250 [14 L. Ed. 133]; Smith v. United States, 10 Pet. 326 [9 L. Ed. 442]. There is nothing in Northern Pacific Railroad Company v. Hussey, 61 Fed. 231 [9 C. C. A. 463], which militates with these views. In that case relief was granted by injunction against a trespasser upon unsurveyed land at the suit of the railway company, its contingent interest being held sufficient for that purpose. The paramount control and property in the United States was not in question."

It was conceded at the argument that under this decision it would be impracticable for the defendant by proof to establish the fact that the lands from which the timber was cut are embraced in what will be section 36, and, were it not for the admission in the complaint substantially identifying the lands with this section, it would be impossible successfully to defend upon this ground; but in my view such admission in the complaint does not substantially alter the case. The general principle remains the same, and the reasoning of the court in the Montana Lumber Company Case is thought to be decisive.

The amended demurrer to the answer will therefore be sustained, with leave to defendant to amend.