ALEX. B. GROGAN *v.* HENRY KNIGHT, ESTHER $\begin{smallmatrix} 27 & 515 \\ 81 & 594 \end{smallmatrix}$ ANN PACKWOOD, JOEL RUMSEY, ELLSWORTH TILTON, JOSEPH SAVAGE, JOHN DUGAN, JOHN J. REED, AND PETER COGGSWELL.

SURVEY OF PUBLIC LANDS. — The survey of the public lands of the United States into sections and subdivisions of sections can only be made under the authority of Congress, and is beyond the control of the States.

SELECTION OF SCHOOL LANDS BY A STATE. — A selection of public lands made by the authorities of a State in lieu of the sixteenth and thirty-sixth sections granted to the State for school purposes, before the lands selected have been surveyed by the United States, and the survey approved, is invalid, and confers no title upon the State.

SALE OF UNSURVEYED LANDS BY A STATE.—A sale and certificate of purchase made by a State of lands selected by the State in lieu of the sixteenth and thirty-sixth sections, before the lands thus selected and sold have been surveyed and the survey approved by the United States, confers upon the grantee of the State no title or right of possession.

APPEAL from the District Court, Seventh Judicial District, Solano County.

Plaintiff recovered judgment in the Court below, and defendants appealed.

The other facts are stated in the opinion of the Court.

*M. A. Wheaton,* for Appellants.

This is an action of ejectment, and the only evidence of title the plaintiff attempted to show was a location of school land warrants on *unsurveyed* public lands of the United States.

These locations being upon unsurveyed lands, were no evidence of title. (Pre-emption Law of Congress of September 4th, 1841, Sec. 8; Instructions of U. S. Land Commissioner, 3d subdivision, p. 502, Lester's Land Laws; also Decisions, No. 507, p. 457, Ib.; *Terry* v. *Megerle,* 24 Cal. 609; Statutes of California of 1863–4, p. 301.)

The defendants had the possession sued for at the time the locations were made on which the plaintiff's certificates issued. (Act concerning certificates of purchase, Statutes of 1859, 332; Id., Sec. 5, 302.)

*Whitman & Wells,* for Respondent.

The plaintiff in this case has based his claim upon certificates of purchase issued by the State Land Office for land selected as school land, taken in lieu of sixteenth and thirty-sixth sections, and duly assigned to him, and certificates of school warrants.

This selection and sale is authorized by Acts of Congress providing for the survey of public lands in the State of California, the sixth section of which specifically grants the sixteenth and thirty-sixth sections to the State for the support of schools. (*Wyman* v. *Banvard,* 23 Cal. 524; *Higgins* v. *Houghton,* 25 Cal. 252.)

The seventh section provides that the proper authorities of the State may select other lands in lieu thereof when such sections may be reserved for public uses or taken by private

claims, which lands shall be selected agreeably to the provisions of an Act of Congress, approved May 20th, 1826, and which shall be subject to approval by the Secretary of the Interior.

The right of the State to enact such a law has been sustained by the Federal Courts. (Acts of 1861, 218, etc.; *Jackson* v. *Wilcox*, 13 Peters, 498.) And until the United States complains of it, or the question arises upon a patent issued from the United States, it is competent for this Court to uphold the selection made by the State, for we do not see here any adjudication as against the claim or title of the United States.

By the Court, RHODES, J.

This is an action of ejectment to recover the possession of a portion of the lands formerly known as the Suscol Rancho. The premises are public lands of the United States, and have never been surveyed under the authority of Congress. The plaintiff relies for his title upon certificates of purchase issued October 17, 1862, by the Register of the State Land Office, upon the location and sale of school lands, selected in lieu of the sixteenth and thirty-sixth sections of the public lands of the United States. The United States Register of the proper land district refused to approve the selection, because the lands were unsurveyed. The defendants were in possession, they having entered upon the land in May, 1862, and each of them claimed a right of pre-emption under the Acts of Congress, to the respective quarter sections upon which he had entered.

It appears in the statement on the defendants' motion for a new trial, that " the plaintiff testified that one Dr. Page had caused the lands to be inclosed in 1861; that said Dr. Page was the real party in interest in this suit; that the plaintiff only held the lands in his name in trust for Dr. Page, and to secure him for the advances he had made ; that said Dr. Page had replevied the crops raised on the land, and received the same for

the year 1863, and had pastured the pasture part of the land; also had received the profits of the land in 1862." The Court found as facts: "First—On the 28th day of October, A. D. 1862, the plaintiff held the certificates of the State of California, duly issued, for the land in controversy; Second—The inceptive steps for the obtaining such certificates were taken before any one of the defendants entered upon the land." The prior possession of the plaintiff, or his grantor, is neither admitted by the pleadings nor found by the Court; and the only finding of fact respecting the plaintiff's title, possession or right of possession, is as above mentioned. The Court from those facts found the following conclusions of law: "First—The plaintiff was at the time alleged in his complaint seized and possessed of the land in controversy, and had title thereto; Second—The title thus held, and the right of possession flowing therefrom, relate to the first steps taken for acquiring the same." It thus clearly appears that the Court found for the plaintiff on the sole ground that the certificates of purchase were sufficient to convey, and did convey to the plaintiff, the right to the possession of the lands described in the certificates, and not on the ground of the prior possession of the plaintiff or Dr. Page. We are, therefore, not required to determine whether the evidence was sufficient to have enabled the Court to find for the plaintiff on the ground of the prior possession of Dr. Page, if it had clearly appeared that his right depending upon his possession had been transferred to the plaintiff. The first finding of fact, which is unnecessarily indefinite, and merely states a portion of the evidence tending to prove a fact, would seem to indicate that the certificates of purchase were issued to the plaintiff or had been assigned to him, rather than that Dr. Page had conveyed the land to him.

The point upon which the appeal must turn has relation to the value and effect of the certificates of purchase issued by the State.

The defendants resist the claim of title set up by the plaintiff, on the ground that the certificates of purchase, having

been issued before the lands selected had been surveyed according to the laws of the United Statess, were not evidence of title in the person to whom they were issued. It will not be contended that the title to the lands selected passed to the plaintiff, unless the title would have passed to the State upon the performance, in her behalf, of acts similar in their character to those under which the plaintiff claims, for although the certificates issued to the purchaser, the selection and location of the lands was made for the State. Could the State in October, 1862, by her own act, have acquired title to those lands as portions of the lands to be selected in lieu of the sixteenth and thirty-sixth sections, granted for the purposes of public schools, prior to the survey of the lands by the United States ?

The seventh section of the Act of March 3, 1853, provides that such land shall be selected by the authorities of the State agreeably to the provisions of the Act of Congress, approved the 20th of May, 1826 ; and that Act provides that the lands shall be selected in sections and subdivisions of sections.. It requires no argument to prove that the survey of public lands of the United States into sections and subdivisions of sections can be made only under the authority of Congress. The survey is a part of the system devised by Congress for the disposal of the public lands ; and the survey is as completely beyond the control of the State authorities as any portion of the system. The selection of a particular tract, as a subdivision of public land, in anticipation of the survey by the United States, would be no less wanting in authority than would the selection of a designated subdivision in anticipation of the grant by Congress. In *Bernard's Heirs* v. *Ashley's Heirs*, 18 How. 43, a selection of land had been made by the Governor of the Territory of Arkansas, under the Acts of Congress, authorizing him to select lands equal to ten sections, in tracts not less than a quarter section each, and to sell the same for the purpose of raising a fund to erect public buildings in the territory ; and it was held that the selection that he had made of a quarter section within a township, the sur-

vey of which was incorrect and had not then been approved by the Surveyor-General, was invalid, and that the selection could take effect only from the time when the survey was sanctioned and became a record in the district land office.

A question quite similar in its character, in all its essential particulars, was before the Court in *Terry* v. *Megerle*, 24 Cal. 609, the plaintiff claiming title to the lands by virtue of the location upon unsurveyed lands, of " school land warrants," issued by the State, under the Act to dispose of the five hundred thousand acres granted to the State, for the purposes of internal improvements.    Mr. Chief Justice Sanderson, in commenting upon the provisions of the Act of Congress, says : " There is no ambiguity in the language used ; on the contrary, the meaning is too plain and obvious to admit of doubt.    The language is, ' located as aforesaid,' that is to say, in parcels of not less than three hundred and twenty acres, conformably to sectional divisions and subdivisions and after the survey has been made.    *    *    *    The grant imposes conditions as to quantity, manner of selection and location, and time of location, and under it no title to any specific land can vest in the State until all of these conditions have been complied with.    The State has no more right to select and locate lands before the survey has been made, than she has to locate it in tracts of one hundred and sixty acres each, or without regard to sectional divisions and subdivisions of the United States survey."    We are entirely satisfied with the construction announced in that case, of those provisions of the Act in question, and it is difficult to understand how it could be contended that the grantee of the State, of land selected under her sole authority, prior to the United States survey, thereby acquired the legal title, when it is capable of mathematical demonstration that his asserted title to any given acre of the three hundred and twenty acres selected and located for him by the authorities of the State, is liable to be defeated by the survey subsequently made by the United States.

In the case of *Barry* v. *Gamble*, 3 How. 32, one of the questions was the sufficiency of the location of a New Madrid

land certificate, which had been located on public lands prior to the United States survey; and Mr. Justice Catron in delivering the opinion of the majority of the Court, said: " The location was in irregular form, and altogether disregarded the section lines and the ordinary modes of entry under the laws of the United States. This circumstance lies at the foundation of the controversy. The General Land Office, at Washington, refused to issue a patent on locations thus surveyed. The Secretary of the Treasury, on the 11th of May, 1820, and again on the 19th of June, 1820, called on the Attorney-General for his opinion on the validity of such locations. (2 Land Laws and Opinions, 9, 10.) This officer replied 'that the authority given is to make these locations on any of the lands of the Territory, the sale of which is authorized by law; but the sale is not authorized by law until the sectional lines are run, and consequently all locations previously made by these sufferers are unauthorized.' To cure this defect the Act of 1822 was passed," etc. And the Court held that the location was rendered valid by that Act.

It may be admitted that, by virtue of the Act of Congress of 1853, the State became entitled to an amount of land equal to two sections in each congressional township, yet as the State did not, by virtue of that Act, acquire the title to any specified tract of land, and could not acquire it, until the survey had been made under the authority of Congress, it necessarily follows that, prior to such survey, she had no power or authority to confer upon a purchaser from her any right, title or interest in any specific parcel of such lands.

If the selection had been made after the survey, and it remained only subject to the approval of the Secretary of the Interior, the person claiming under the State might with more propriety say, in the language of the respondent, " until the United States complain of it, or a question arises upon a patent issued by the United States, it is competent for this Court to uphold the selection made by the State," but if the selection is prior to the survey, and the defendant goes into possession, without a trespass upon the actual possession of the purchaser

66

from the State, if the latter claims protection on the ground that the United States may not complain of his selection and location, the defendant may well reply that the United States may not complain of *his* possession. The question is not whether the General Government will or will not complain of his selection of unsurveyed public land, but it relates to the title on which he seeks to recover the possession ; the question is, did the acts and proceedings of the officers, acting on behalf of the State, confer upon the purchaser from her the right to the possession of a tract of unsurveyed land ? And this must be answered in the negative. We would not be justified in temporizing with this question, on the consideration that there are very many similar claims to title in this State, the value of which might be impaired by our decision in this case ; but, feeling as we do, that the question admits of but one solution, it is our plain duty to declare the law.

The error assigned by the defendants, in ordering their testimony relating to their pre-emption claims to be stricken out, becomes immaterial, in the view we have taken of the case, and in the absence of a finding of the fact of the prior possession of the plaintiff or his grantor.

Judgment reversed and the cause remanded.

Mr. Justice CURREY and Mr. Justice SAWYER expressed no opinion.