JOHN MIDDLETON *v.* F. F. LOW, GOVERNOR OF CALIFORNIA.

DEMURRER.—A demurrer to the answer to a petition for a writ of mandate is an admission of the truth of the matters averred in the answer.

SIGNING A PATENT FOR LAND, BY THE GOVERNOR. — The signing of a patent by the Governor, to give effect to a sale of lands of the State made by other State officers, is purely a ministerial act.

DUTY OF GOVERNOR TO SIGN A PATENT.—If land sold by State officers belonged to the State, and all the acts required to be done prior to the issuing of the patent have been duly performed, and the purchaser is competent to purchase, it is the duty of the Governor to execute the patent unless the law has vested him with discretionary powers in that respect.

MANDAMUS ON GOVERNOR.—If land sold by State officers was the property of the State, and all the acts required by law prior to the issuing of the patent have been duly performed, and the purchaser is competent to purchase, a writ of mandate will be issued to compel the Governor to sign the patent, unless the law has vested him with discretionary powers in that respect.

Statement of Facts.

WHEN THE GOVERNOR IS AMENABLE TO MANDAMUS. — When a ministerial duty, affecting a private right, is specially devolved on the Governor by law, which the Legislature might have devolved on any other State officer, he may be compelled to perform the same by a writ of mandate.

TITLE OF STATE TO SIXTEENTH AND THIRTY-SIXTH SECTIONS. — Whatever title the State has to the sixteenth and thirty-sixth sections she acquired by the Act of Congress to provide for the survey of the public lands in California, etc., approved March 3d, 1853.

SIXTEENTH AND THIRTY-SIXTH SECTIONS.—This State did not, by the grant from Congress of the sixteenth and thirty-sixth sections, acquire any title to those sections when they fell within the limits of a Mexican or Spanish grant.

SURVEY OF SIXTEENTH AND THIRTY-SIXTH SECTIONS.— This State has no title to nor can she vest any title in a purchaser from her of the sixteenth and thirty-sixth sections, until after the same have been surveyed by the United States.

ACT FOR THE SALE OF SCHOOL LANDS.—The Act of the Legislature, passed April 27th, 1863, to provide for the sale of State lands, does not provide for the disposal of the sixteenth and thirty-sixth sections until after they have been surveyed by the United States.

CERTIFICATE OF REGISTER OF STATE LANDS. — The certificate of the Register of State lands, accompanying a patent for land in a sixteenth or thirty-sixth section, which he presents to the Governor for his signature, stating that the same have been surveyed by the United States and are the property of the State, is not conclusive upon the question of title ; and when it appears that the title is not in the State the Governor is justified in refusing and should refuse to execute the patent.

REGISTER OF STATE LANDS.—The Register of State lands is not a judicial but a ministerial officer.

WHEN THE GOVERNOR MAY REFUSE TO SIGN A PATENT.—The Governor may refuse to sign a patent presented to him by the Register for land sold by the State embraced within a sixteenth or thirty-sixth section, if the land has not been surveyed by the United States, or lies within the limits of a Mexican or Spanish grant.

MANDAMUS ON THE GOVERNOR.—The Governor will not be compelled by writ of mandate to sign a patent for land embraced in a sixteenth or thirty-sixth section which has not been surveyed by the United States or which lies within the limits of a Mexican or Spanish grant.

APPLICATION for writ of mandate made to the Supreme Court.

The Register presented to the Governor the following certificate, and at the same time handed him a patent for his signature.   The Governor refused to sign the patent :

"I, J. F. Houghton, Register of the State Land Office of the State of California, hereby certify that John Middleton having fully complied with the provisions of an Act entitled 'An Act to provide for the issuance of patents to lands located with State School Land Warrants, and for lands pur-

chased under the Act of April 23d, 1858,' passed April 16th, 1859—the Acts approved April 22d, 1861, and April 29th, 1863—is entitled to receive a patent for the following described tract of State School Lands, to wit: The fractional northwest quarter of Section Number Thirty-Six, (36,) in Township Number Two, (2,) South Range Number Six, (6,) West Mount Diablo Meridian, containing 133 48-100 acres, in lieu of 160 acres.

"STATE LAND OFFICE,      }
      "State of California. }

"In testimony whereof, I have hereunto set my hand and affixed my official seal, this 18th day of August, 1864.

{ L. S. }                    "J. F. HOUGHTON, Register,

              "By A. S. BENDER, Deputy."

After the decision upon the motion to strike out the answer the plaintiff dismissed the action.

The other facts are stated in the opinion of the Court.

·*George Cadwalader*, for Plaintiff, argued that if a legislative Act enjoined on the Governor the performance of a ministerial duty, mandamus would lie to compel him to perform it, and that he was no more exempt from proceedings in mandamus than any other officer belonging to the executive department of the Government. He also argued that a certificate of the Register of the State Land Office, made out in due form, was a final judgment of the State upon all the matters therein embraced, and was conclusive of the truth of the same, and that the Governor could not go behind of nor question it, and had no discretion in the matter, and that it was the duty of the Governor upon the presentation of this certificate, with a patent ready for his signature, to sign the same. He argued further that the duty of the Governor in signing a patent, being purely ministerial, it was a matter of indifference whether the land was embraced within the limits of a Mexican grant, for if it was, the holder of the State patent would take

the same subject to the superior title of the owner under the grant.

*J. G. McCullough, Attorney-General, J. B. Felton, Sharp & Lloyd, T. I. Bergin,* and *W. H. Tompkins,* for Defendant, argued that mandamus would not lie to compel an officer to do an act which, without its command, it would not have been lawful for him to do; and cited *The People* v. *Commissioners of Highways,* 27 Barb. 96; and that as the State had no title to the land, the patent, if it issued, would be void; and the writ, if it issued, would only coerce the Governor to do an act which would cloud the title of the rightful owner of the soil and lead to litigation. They also argued that the certificate of the Register as to lands not belonging to the State was unauthorized and void, inasmuch as the Register had no authority conferred on him to certify concerning lands belonging to private individuals, and that ownership of the land by the State was a jurisdictional fact which might be controverted in any stage of the proceedings; and cited *In the Matter of Coryell,* 22 Cal. 178; *Keller* v. *Hyde,* 20 Cal. 594; *The People* v. *Stout,* 23 Barb. 354; and 2 Vol. Opinions Att'y-Gen., 15 Lester's Land Laws, p. 659. They also argued that the act of signing the patent was not so purely a ministerial act as to make the Governor amenable to the process of mandamus, and that the discretion with which he was vested by the Constitution in executing the laws was not taken away by the fact that there was a clause in the Act requiring him to sign patents.

By the Court, RHODES, J. :

Mandamus to compel the Governor to execute to the petitioner a patent for a tract of land, alleged to be a part of a thirty-sixth section. The petition states the several steps taken by the petitioner, and the proceedings had before the Surveyor-General of the State and the Register of the State Land Office, and the other officers of the State, for the pur-

pose of effecting a purchase of the lands from the State; that the land had been duly surveyed by the United States; that the Register presented his certificate to the Governor, which recites that the relator had complied with the several provisions of the Acts of the Legislature relating to the purchase of such lands, and was entitled to receive a patent for the land; and that the Register presented a patent to be executed by the Governor, but the Governor refused to execute it.

The defendant in his answer denies some of the material allegations of the petition, and sets up new matter in avoidance of the facts upon which the petitioner relies. He denies that the lands have been surveyed by or on behalf of the United States, or that the United States authorized or were consenting to any survey of the lands, or acknowledged or acquiesced in any survey of the lands; or that the lands were subject or liable to be selected by the State, or that she ever made or authorized any selection to be made of the lands, or that the State has or ever had any right, title or interest therein. He avers that the lands are embraced within the exterior boundaries of the Rancho Laguna de la Merced, a grant made by the Mexican Government in 1835, the claim to which has been finally confirmed by Courts of the United States, but the boundaries of which are unsettled—cross appeals to the Supreme Court of the United States, taken both by the United States and the claimants, from the decree of final confirmation of the survey of the rancho, being now pending. He further avers that the City of San Francisco, which succeeded to the rights of the Pueblo of Yerba Buena, presented to the Board of Land Commissioners a petition for the confirmation of her claim to the four leagues of land to which the pueblo was entitled, that the same is now pending on appeal to the United States Circuit Court, and that the premises in controversy are included within the four leagues claimed by the city.

The petitioner moved the Court to strike out and disregard the answer as immaterial, but the counsel have treated the motion as equivalent to a general demurrer, and it will be so

regarded by the Court. The effect of the demurrer is the admission by the relator of the matters stated in the answer, and the question is whether such matters constitute a defense to the action.

The signing of a patent for land, which is required by law to be executed by an officer, to give effect to a sale made by other officers of the Government, and as a means of passing the title of the Government to the purchaser, is purely a ministerial act. In a case where the land sold, was the land of the Government making the sale, and all the acts required to be done prior to the issuing of the patent have been duly performed, and the purchaser is competent to purchase, the duty is imperative upon the officer charged with the execution of the patent to execute it, unless the law has vested him with discretionary powers in that respect. The same rule would apply to the Governor as to an inferior or subordinate officer. It cannot be said that the Governor has the discretion to execute the patent or not, as to him may seem proper, when all the facts appear, showing the legal right of the purchaser to make the purchase, and that he has in fact made the purchase.

"But," it is asked by the counsel for the defendant, "is the issuance or signing of the patent by the Governor as purely a ministerial act as to make him amenable to the process of mandamus?" It is difficult to understand how the alleged duty can be any less ministerial, or can partake any more of the characteristics of a purely executive duty of a political nature, merely because the law requires the act to be performed by the Governor instead of some inferior officer. The constitutional injunction that "he shall see that the laws are faithfully executed," cannot change the character of a duty which the Legislature has seen fit to impose upon him; for if the given duty is ministerial when it is required to be performed by any officer, it remains of the same nature though required of the chief executive officer of the State. In *Marbury* v. *Madison*, 1 Cranch, 137, it is said that "It is not by the office of the person to whom the writ is directed, but the

76

nature of the thing to be done, that the propriety or impropriety of issuing a mandamus is to be determined."

In that case Mr. Chief Justice Marshall, after speaking of certain important political powers of the President, and of his authority to appoint certain officers, among whom is the Secretary of State, to aid him in the performance of his duty, who acts by his authority and in conformity with his orders, and whose acts are the acts of the President, says : " He is the mere organ by whom that will (the will of the President) is communicated. The acts of such an officer, as an officer, can never be examined by the Courts. But when the Legislature proceeds to impose on that officer other duties; when he is directed peremptorily to perform certain acts; when the rights of individuals are dependent on the performance of those acts, he is so far the officer of the law, is amenable to the law for his conduct, and cannot at his discretion sport away the vested rights of others." In speaking of the commission in question in that case the Court say : " The commission being signed, the subsequent duty of the Secretary of State is prescribed by law, and not guided by the will of the President. He is to affix the seal of the United States to the commission, and is to record it. This is not a proceeding which may be varied, if the judgment of the Executive shall suggest one more eligible, but is a precise course, accurately marked out by law, and is to be strictly pursued.   *   *   *   It is a ministerial act which the law enjoins on a particular officer for a particular purpose."

The distinction between acts which may be performed by the Executive, as such, in respect to which he may exercise his discretion, uncontrolled by any other department of Government, and those ministerial acts enjoined upon him by law, is very fully considered in the case of *The State* v. *The Governor of Ohio*, 5 Ohio, 534. The Court there held that, " in regard to a mere ministerial duty enjoined on him by statute, which might have devolved on another officer of the State, and affecting any specific private right, he may be made amenable to the compulsory process of the Court by man-

damus." The question is discussed with great ability by the Court in *McCauley* v. *Brooks*, 16 Cal. 11, and the distinction between the two classes of duties which may be required of officers belonging to the executive department is clearly pointed out.

It is the duty of the Governor to execute the patent, and a mandamus will issue to compel him to execute it, in case of his refusal, if the statute regulating the sales of such lands has been complied with by the several officers and the purchaser, and the land was subject to sale by the State.

Whatever title the State holds, or may acquire, to sections sixteen and thirty-six, inures to her under the operation of section six of the Act of Congress to provide for the survey of the public lands in California, the granting of pre-emption rights therein, and for other purposes, approved March 3d, 1853. The grant from the United States to the State of California is found in this clause of the section : " That all the public lands in the State of California, whether surveyed or unsurveyed, with the exceptions of sections sixteen and thirty-six, which shall be and are hereby granted to the State, for the purposes of common schools in each township, and with the exception of lands appropriated under the authority of this Act, or reserved by competent authority, and excepting also the lands claimed under any foreign grant, or title, and the mineral lands, shall be subject to the pre-emption laws of the fourth of September, one thousand eight hundred and forty-one," etc. Section seven of the Act contains a limitation of the grant of the several sixteenth and thirty-sixth sections. It is therein provided, " That when any settlement, by the erection of a dwelling house, or a cultivation of any portion of the land, shall be made upon the sixteenth and thirty-sixth sections, before the same shall be surveyed, or when such sections may be reserved for public uses, or taken by private claims, other land shall be selected by the proper authorities of the State in lieu thereof," etc. The lands that may be taken by " private claims," mentioned in section seven, we understand to be the same as the lands " claimed

under any foreign grant or title," as referred to in section six—at least, "private claims" to land would comprehend claims "under any foreign grant or title." It is apparent that Congress did not grant to the State the sixteenth or thirty-sixth sections that might fall within the limits of the tracts of land claimed under any foreign grant or title; but when such was the case, the Act directs that the State shall select other land in lieu thereof. If the lands in controversy are included within the exterior bounds of the Rancho Laguna de la Merced, and within the four leagues of land to which the pueblo was entitled by law, as alleged in the answer, or within either of them—and the demurrer admits that the lands were included both in the rancho and the pueblo lands—the State acquired no title in the lands by virtue of the grant of lands by Congress to the State, for the purposes of public schools. No other claim of title on behalf of the State is set up by the petitioner than such as she acquired under the Act of Congress referred to.

There is a further matter, that has an important bearing upon the question of title in the State to the lands in this case. The petitioner avers that the lands were duly surveyed by the United States, and the defendant denies the averment in the fullest terms, and by the demurrer it stands admitted that they have not been surveyed by the United States. We had occasion, in the case of *Grogan* v. *Knight*, 27 Cal. 515, to consider the question of a selection of lands in lieu of the sixteenth and thirty-sixth sections, prior to the survey by the United States of the lands selected, and we held that the right of selection by the State could not be exercised until after a survey had been made by the United States, and that a selection previous to such survey could not vest the title in the State, or a purchaser from her. The reasons operating to prevent the State or her vendee from acquiring a title by the aid of a selection made, as in that case, before the congressional survey, are equally cogent to show that title to any particular parcel of the lands granted for the purposes of public schools does not vest in the State until such survey has

been made. There is, in fact, no such tract of land as that described in the petition until it has been located within the congressional township, by an actual survey and establishment of the lines, under the authority of the United States, and the survey has been approved by the proper United States Surveyor General. A person may approximate to the lines that may be run—may surmise the precise lines—but the tract has no separate legal identity until the survey is made and approved under the authority of Congress.

An examination of the Act of the Legislature, passed April 27th, 1863, (Statutes 1863, p. 591,) under which the petitioner claims, will show that it was the intention of the Legislature to provide for the disposal of the lands granted to the State, and that they made provision for the sale and conveyance of the land, and not merely of the State's inchoate title or claim to the lands. We would not be justified in presuming that the Legislature intended that the State should engage in trafficking in spurious or doubtful land titles, nor does the Act lend countenance to the opprobrious imputation, that the officers of the State were directed to engage in such transactions.

The Act of the Legislature is framed on the theory that the title to any particular parcel of land does not pass until a survey by the United States is made, for in section twenty-two, the only section that provides for the execution and issuance of the patent for the lands sold, the patent is required to be signed by the Governor " when any final payment shall have been made for any tract sold by the State which is situated upon lands which have been surveyed by the United States, and the selection has been duly accepted by, and all papers required by law duly procured from, the proper officer of the Government, or when the tract so finally paid for shall be swamp or tide lands;" and when the Register of the State Land Office shall have prepared and forwarded to the Governor the patent and his certificate that the laws relating to the particular case have been complied with.

It thus appears that the grant to the State has not attached

to the land in controversy, both because of the exception in the Act of Congress in favor of private claims, and because the lands have not been surveyed by the United States; and that therefore the lands were not in fact subject to sale under the Act of the Legislature of 1863. It will be noticed that the presentation to the Governor of a patent prepared by the Register, and the Register's certificate, stating that all the laws relating to the particular case of sale have been complied with, are not the only conditions upon which depends the duty of the Governor to execute the patent, but it is provided, as a further condition, that the lands for which the patent is to be executed are " situated upon lands which have been surveyed by the United States," if other than swamp or tide lands. In our judgment it was not only the right, but the duty of the Governor to refuse to execute the patent.

But it is urged that the Governor does not possess the discretion to execute, or to refuse to execute the patent, as his judgment may dictate; and it may be properly admitted that he does not, in case all the acts requisite to constitute the sale have been correctly performed, and the lands sold are the lands of the State. It is also claimed that the Register is required by law to pass upon all questions touching the sale, and that he has determined that all the requisite facts exist in this case, to constitute a complete and valid sale. To this it may be answered that the Register is not vested with judicial powers, and he has not the capacity to determine the issue whether the title has passed to the State; he cannot create a title; nor can he, by his assertion, determination or certificate that the title has passed from the United States to the State, vest it in the State. He may certify that the prescribed forms of the laws have been complied with by himself, the officers acting in subordination to him, and the purchaser; but the fundamental fact of title in the State must exist, or all his acts are void. That fact is a condition precedent to any action on his part, tending towards a sale, and in its absence, whether certified by him or not, his acts are as powerless and futile as would be an execution issued without a judgment to support it. (See

*People* v. *Commissioners of Highways of Seward*, 27 Barb. 94,
and cases cited.)    Besides this, if it could be said that he could
in any case, ascertain or determine the fact, that the title had
passed to the State, his determination would be disregarded in
this case, for it stands opposed and is overcome by the facts ad-
mitted by the pleadings, showing that in truth the title has not
vested in the State.    The recital or finding by the Register of
the fact of title in the State is not conclusive ; and if the pro-
ceedings had by or before him, can be regarded as even quasi-
judicial, the fact of title in the State is a jurisdictional fact,
and as such is liable to be rebutted and is open to contradic-
tion, on the same principle that a jurisdictional fact assumed
or found by a Court may be contradicted.    In *The People* v.
*Cassels*, 5 Hill, 164, which was certiorari to a County Judge
to remove certain proceedings before him upon habeas corpus,
Mr. Justice Bronson, in delivering the opinion of the Court,
said : " But the prisoner had an undoubted right to show that
the committing magistrate acted without authority ; and this
is so, notwithstanding the commitment recite the existence of
the necessary facts to give jurisdiction.    No Court or officer
can acquire jurisdiction by the mere assertion of it or by falsely
alleging the existence of facts on which jurisdiction depends."
The magistrate had stated in the commitment that the con-
tempt with which the defendant was charged was committed
on the trial of a cause before him, and it appearred before the
County Judge that the supposed contempt did not happen on
the trial of a cause.    In *Prosser* v. *Secor*, 5 Barb. 608, it is
said, in considering the proceedings of Assessors in assessing
property claimed as exempt from taxation : " In determining
whether they have jurisdiction or not, in a given case, Assessors
do not act judicially.    No officer can acquire jurisdiction by
deciding that he has it.    In all such cases, every officer, whether
judicial or ministerial, decides at his peril."    Mr. Justice Paige
says, in *Harrington* v. *The People*, 6 Barb. 607 : " No Court or
officer can acquire jurisdiction by the mere assertion of it, or
by falsely alleging the existence of facts on which jurisdiction
depends."    Suppose, in this case, the lands were situated near

the eastern boundary of the State, and that after the presenta-
tion to the Governor of the Register's certificate, it had been
ascertained by running the boundary line that the lands were
not within the State, would it be said that the Governor was
bound to execute the patent because of the conclusiveness of
the Register's certificate—or should he not rather refuse its
execution, for the reason that the law requiring him to execute
a patent, for the sole purpose of conveying the lands of the
State, did not require him to execute a patent for the lands
that were not in fact the lands of the State?

This is not a case in which it can be said that the Governor
refuses to execute the patent, in the exercise of his discretion,
as might be said if the refusal was based upon his opinion of
the propriety of selling the land, or of the regularity of the
several acts required to be performed before the patent is to
be signed, or upon similar grounds ; but the refusal rests upon
the ground that it is his duty to refuse to execute a patent for
lands not owned by the State, notwithstanding the Register's
certificate.

These views of the power and jurisdiction of the Register
do not conflict with the decision in *Tyler* v. *Houghton*, 25 Cal.
26.   In that case Granger wished to purchase certain lands
of the State, and for that purpose, to have them selected by
the State in lieu of the sixteenth and thirty-sixth sections,
authorized to be selected under section seven of the Act of
Congress of 1853.   Under the provisions of the statutes of
the State, the proceedings to make the selection by the author-
ities of the State, and those to effect a purchase from the State
move *in pari passu.*   Tyler being interested as a trustee in
the lands sought to be selected, objected to their being selected
by the State.   The contest which he desired to have insti-
tuted before the Register, and which this Court ordered him
to entertain and dispose of, was for the purpose of determin-
ing whether the Register and the other State officers should
proceed with the performance of certain ministerial acts
which were required in order to constitute a selection of the
lands by the State—not to ascertain whether the title was

already in the State, or in the United States.   Title was not
and could not be in question, and if it had been admitted in
the proceedings for mandamus, that the title was not in the
United States, the mandamus would have been refused, or if
the same admission had been made in the contest before the
Register, the contest must have ceased, and both for the same
reason, because the officers could not proceed to make the
selection for or on behalf of the State, of lands not belonging
to the United States.

The Register being an officer belonging to the executive
department of the Government, is not permitted by the Con-
stitution to exercise judicial functions, and the Court, in that
case, did not decide that he possessed the power, which would
necessarily be judicial, to determine an issue as to when the
title vested, or that his action in the matter of the contest
would be final or conclusive upon the question of title, when
the question was brought before another officer or tribunal.
His proceedings are still of a ministerial nature, as well in the
matter of the contest as in approving a survey or issuing a
certificate.   In proceedings by him in the selection and loca-
tion of lands for the State, in lieu of the sixteenth and thirty-
sixth sections, whether there is a contest or not, the fact of
title in the United States to the land sought to be selected, is
a jurisdictional fact; and in its absence, his decision that the
land should be selected, as well as his acts in making the
selection, would be as void of all legal effect as would be a
judgment rendered by a Court having no jurisdiction of the
subject matter of the action.

The points we have discussed, relating to the question of
title in the State, to the lands sold, have an important bearing
upon a principle that is vital to the writ of mandamus, lying
at the very foundation of the relator's right.   It is said in
Tapping on Mandamus (pp. 9, 10) that the Court, in the exer-
cise of its authority to grant the writ, "will render it, as far
as it can, the supplementary means of substantial justice in
every case where there is no other specific legal remedy for a

77

legal right; * * * that the writ will not be granted unless to prevent a failure of justice—that is, it issues upon the assumption that that which ought to have been done at a time past, has not been done." No amount of argument would be able to prove that upon the facts in this case, the relator had a legal right to a patent from the State purporting to convey to him the lands in controversy, as the lands of the State.

The motion must be denied.

SAWYER, J., concurring:

I concur in the order.

SHAFTER, J., concurring specially:

While I am compelled to dissent from the whole of the argument contained in the opinion delivered by the majority of the Court, I concur in the judgment. I put my concurrence upon the ground that it does not appear by the Register's certificate that the lands in question have been surveyed on behalf of the United States or by the County Surveyor of the county in which the lands are situate. The powers of the Governor in the matter of issuing the patent are, in my judgment, purely ministerial. But it is in the direct line of his ministerial service to see that the certificate sent to him by the Register covers every point of fact which the law requires it to contain. Though the Governor cannot go behind the certificate, yet he not only may, but is required to look into it; and if on looking into it he finds that it does not include all the points to be included in it by statute requirement, then it is the same as though no certificate had been attempted.