[No. 6,686.—Department No. 2.]

## MEDLEY v. ROBERTSON ET AL.

STATE LANDS — SURVEY — DEFINITION. — Sixteenth and thirty-sixth sections
are deemed to be *surveyed*, for the purposes mentioned in § 3495, Political
Code, only when the plat of the survey of the township has been approved
by the United States Surveyor-General.

ID. — ID. — CASE OVERRULED. — *Dictum* to the contrary in Oakley v. Stuart,
52 Cal. 522, overruled.

ID.—ID.—APPLICATION TO PURCHASE.—The title to a particular 16th or 36th
section does not vest in the State before the plat of the survey of the town-
ship has been approved by the United States Surveyor-General; and an ap-
plication to purchase such land, made before the approval of the survey, is
unauthorized and void.

APPEAL from a judgment for the defendant, and from an or-
der denying a new trial, in the Eleventh District Court, County
of El Dorado.   WILLIAMS, J.

The facts are stated in the opinion.

*W. C. Van Fleet,* and *H. O. Beatty,* for Appellant:

Cited *Finney* v. *Berger,* 50 Cal. 248; *Middleton* v. *Low,* 30
id. 604; *Terry* v. *Megerle,* 24 id. 609; *Bernard's Heirs* v. *Ash-
ley's Heirs,* 18 How. 43; *Oakley* v. *Stuart,* 52 Cal. 521.

*Geo. G. Blanchard,* for Respondent:

Cited *Oakley* v. *Stuart,* 52 Cal. 521; *Lessieur* v. *Price,* 12 How. 76–7; *Landes* v. *Brant,* 10 id. 348; 5 Cruise on Real Prop. 510–11.

MYRICK, J.:

This is an action to determine a contest arising in the Surveyor-General's office regarding the right of the parties to purchase the north half of a 36th section. The Court below filed its findings, upon which judgment was rendered for defendant. The following is a statement of the facts taken from the findings of the Court:

" The section was surveyed by a Deputy United States Surveyor, acting by authority, and all the lines thereof run and marked, and the corners established in the field, prior to September 24th, 1873; the field-notes of said survey were not returned to or filed in the office of the United States Surveyor-General for California, until after September 26th, 1873; the said survey and a proper plat were approved by the United States Surveyor-General for California, March 21st, 1874, and filed April 29th, 1874, in the United States Land Office. On the 26th of September, 1873, (after the survey in the field, but before the approval) the defendant, Robertson, presented and filed with the Surveyor-General of this State his affidavit and application to purchase of this State the said land, consisting of 320 acres; and August 4th, 1874, the application of Robertson was approved by the Surveyor-General of this State, a copy of which approval was forwarded to Robertson, and he made the first payment to the County Treasurer, and on the 3rd of October, 1874, the Register of the State Land Office issued to said Robertson a certificate of purchase. On the 18th of February, 1876, plaintiff made his affidavit and application to purchase the land of the State, which were, April 1st, 1876, presented to and filed by the Surveyor-General of the State, which application said Surveyor-General refused to approve, and this controversy thence arose."

It thus appears that after the survey was actually made, but

before the survey and field-notes were returned to, filed with, and approved by the United States Surveyor-General, defendant made his application; and plaintiff insists that the title to the land did not pass to the State until the approval, and that, therefore, defendant's application is void, notwithstanding the fact that his application was subsequently approved, and a certificate of purchase issued to him.

It has been more than once held by this Court that the State cannot convey title to the 16th and 36th sections, until after it receives the title, and that it does not receive the title to any specific land, until the plat of the survey has been approved by the United States Surveyor-General. (*Terry* v. *Megerle*, 24 Cal. 610; *Middleton* v. *Low*, 30 id. 596.)

The defendant claims to make out his right to purchase under § 3495, Political Code. Under that section lands must have been surveyed by the United States before an application to purchase can be made. The question for consideration, therefore, in this case is, when are the 16th and 36th sections to be deemed to be *surveyed* for the purposes mentioned in said § 3495.

In *Oakley* v. *Stuart*, 52 Cal. 522, it was recognized to be " the practice of the State Land Department to treat as properly filed, applications filed at any time after survey in the field and the approval thereof by the Surveyor-General "; and that under the public land system and practice of the Land Department of the United States, lands have always been treated as *surveyed* when the lines were run in the field, and monuments or marks established by the proper surveyor.

That point, however, was not necessarily involved in the decision of the matter in controversy in that case. It is true that in one sense lands may be said to be surveyed when the lines have been run and the corners established. To hold that such should be deemed to be a full and completed survey, so as to enable applications for purchase to be made, would practically be to make the acts of the Deputy Surveyor notice to the world, and to compel persons to follow him wherever he went, in order to ascertain what lines had been run and what corners had been established, and would give opportunity for acts of bad faith upon his part in giving private information to his friends

from which they would have an advantage over others. The Surveyor-General's office is a public office, and his records are public; and to hold that his approval is necessary to complete the survey would place all persons upon an equality, and would carry out the principle that where public officers act there should be a record of their acts, and a place where the record can be examined by all. The Surveyor-General is the officer charged with the duty of making the survey. He may employ deputies to work in the field, but until their work be approved by him his mind has not operated upon it.

In the field-notes at the bottom of the survey of the south boundary of the section appears the date "September 13th, 1873"; at the foot of the survey of the east boundary of the section appears the date "September 30th, 1873," and at the foot of the survey of the north and west boundaries of the section appears the date "October 1st, 1873." The Court, against plaintiff's objection, admitted parole evidence tending to show that the lines were run prior to September 24th, 1873. In this there was perhaps no error; but the fact that it was necessary to show by parole evidence, and very uncertain evidence at that, that the lines were run prior to the filing of defendant's application, when the field-notes show that three of the lines were run after his application, demonstrates very clearly the propriety of holding that the approval by the Surveyor-General constitutes the safer guide. In this case, as above stated, the field-notes, filed in the Surveyor-General's office, show that three of the lines were not run until after defendant's applications had been filed; defendant, to overcome this objection, offered evidence tending to show that when the three lines had been run the Deputy Surveyor wrote a letter to one Blair, stating the fact of the survey, who gave the letter to one Frazer, who, thereupon, drafted defendant's application, thus enabling defendant to rely upon evidence not existing in any record or in any office.

In *Finney* v. *Berger*, 50 Cal. 248, this Court held that the title to a particular section does not vest in the State before the plat of the survey of the township had been approved by the United States Surveyor-General, and the defendant's application to purchase, having been filed before the State had ac-

quired the title, was unauthorized and void.    We see no reason to question the soundness of that decision.

Judgment and order reversed, and cause remanded, with direction to enter judgment in favor of plaintiff in accordance with the findings.

SHARPSTEIN, J., aud THORNTON, J., concurred.