# UNITED STATES v. MONTANA LUMBER AND MANUFACTURING COMPANY.

## CERTIFICATE FROM THE CIRCUIT COURT OF APPEALS FOR THE NINTH CIRCUIT.

No. 125.   Argued January 13, 1905.—Decided February 20, 1905.

While the grant to the Northern Pacific Railroad Company under the act of July 2, 1864, was *in præsenti*, and took effect upon the sections granted when the road was definitely located, by relation as to the date of the grant, the survey of the land and the identification of the sections— whether odd or even—is reserved to the Government, and the equitable title of the railroad company and its assigns becomes a legal title only upon the identification of the granted sections. Until the identification of the sections by a government survey the United States retains a special interest in the timber growing in the township sufficient to recover the value of timber cut and removed therefrom.

In a suit brought by the United States for that purpose private surveys made by the railroad company cannot be introduced as evidence to show that the land from which the timber was cut were odd sections within the grant and included in a conveyance from the railroad company to the defendants.

Action by the United States against the Montana Lumber Company and the other defendants for the recovery of $15,000, for the value of 2,000,000 feet of lumber which had been cut by the lumber company on unsurveyed lands within the District of Montana, and converted by the defendants to their own

use. It is alleged that the land from which the lumber was cut when surveyed will be in township 26 N., of range 34 W., of the Montana meridian. The railway company answered separately denying the allegations of the complaint. The other defendants also denied the allegations of the complaint. Further answering, they admitted the cutting of the lumber, but alleged it was cut from land which, when surveyed, would be section 5 of said township, and that said section was within the limits of the grant made by Congress to the Northern Pacific Railroad Company, and that the lumber company was at the time of the cutting the owner of the lands by conveyances from the railway company.

The case was tried to a jury. A nonsuit was granted as to the railway company. Under instructions of the court a verdict was returned for the other defendants.

On the trial of the case the lumber company was permitted to introduce in evidence, over the objection of the plaintiff, a private survey of a portion of the township made by one John J. Ashley, a civil engineer and surveyor, in the year 1886, for the Northern Pacific Railway Company, for the purpose of ascertaining the location of the railroad sections contained in said township, in connection with other evidence that the timber sued for was taken from what Ashley had designated as section 5.

In rebuttal of this evidence the plaintiff offered to prove by George F. Rigby, a surveyor and engineer, that he had made a survey of the same lands, and that the Ashley survey was incorrect, and that section 5 as located by Ashley had been placed three-fourths of a mile too far east. The court ruled out the testimony. From the judgment entered upon the verdict for the defendants the case was taken by writ of error to the Circuit Court of Appeals. Whereupon the latter court stated the facts substantially as above, and recited that there were two other cases pending involving the same questions, and that the court was divided in opinion, and certified to this court the following questions:

"First. Did the District Court for the District of Montana err in admitting in evidence the proof of the survey made by Ashley and the proof tending to show that the timber cut by the Montana Lumber and Manufacturing Company had been cut on what will be, when surveyed by the United States, section 5 of township 26 north, of range 34 west, Montana meridian?

"Second. Did the court err in excluding the evidence offered, on behalf of the plaintiff in error, tending to show that the Ashley survey was erroneous?

"Third. Did the court err in instructing the jury to return a verdict for the defendants in error on the ground that the United States had failed to prove its ownership of the land from which the timber was cut?"

*Mr. Marsden C. Burch,* Special Assistant to the Attorney General, with whom *The Solicitor General* was on the brief, for the United States:

A sovereign makes its own surveys and fixes the boundaries of its grants. The Ashley survey, made under the direction of the railway company, was incompetent, and the fact that Ashley testified that it was made after the method of Government surveys did not relieve it of its vice.

A grantee cannot establish the boundaries of his grant by his own survey, nor can a court of justice do so. *Cooper* v. *Roberts,* 18 How. 175; *Cragin* v. *Powell,* 128 U. S. 691; *Robinson* v. *Forest,* 29 California, 325; *Maguire* v. *Tyler,* 8 Wall. 660, 661; *United States* v. *McLaughlin,* 127 U. S. 428; *Grogan* v. *Knight,* 27 California, 519; *Middleton* v. *Low,* 30 California, 605; *Blake* v. *Doherty,* 5 Wheat. 358; *United States* v. *Hanson,* 16 Pet. 194; *Les Bois* v. *Bramell,* 4 How. 449; *Mackey* v. *Dillon,* 4 How. 448; *Glenn* v. *United States,* 13 How. 256; *Smith* v. *United States,* 10 Pet. 326.

The court erred in excluding the evidence offered by the Government tending to show that the Ashley survey was erroneous and also erred in instructing the jury to return a

verdict for defendants on the ground that the Government had failed to prove its ownership of the land from which the timber was cut.

It is true while some authorities hold that the grant to the Northern Pacific Railroad Company was a grant *in præsenti*, it is also true that no title can pass to any particular land until, the regular official survey has been made, for until then there is no identification of the land granted. Therefore the Government, by its proof of the fact that township 26 was Government land, sustained the allegations of its complaint, and the defendants were therefore forced to disprove the Government's case if they could. This they sought to do by the same evidence which they were to offer in support of their special plea. If, then, such evidence was incompetent, it neither disproved the Government's case nor proved their special plea.

Outside of the thirteen original States of the Union we have been unable to find that any court has ever decided, or that any counsel has ever made the claim, that it was necessary that the United States, being the party plaintiff, should prove the title to its land. As in England primarily all lands were property of the Crown, so in the United States all lands outside of the said original States are presumed to belong to the United States, and any party claiming a title adverse to the Government must prove his way from the Government by a regular chain to himself. *Northern Pacific R. R. Co.* v. *Hussey*, 61 Fed. Rep. 231; *Deseret Salt Co.* v. *Tarpey*, 142 U. S. 241; *United States* v. *Loughrey*, 172 U. S. 206.

There was no brief or appearance for defendant in error.

MR. JUSTICE McKENNA, after making the foregoing statement, delivered the opinion of the court.

In the view we take of the case the answer to the second question becomes unnecessary. The answer to the first and third depends upon the effect of the grant to the Northern Pacific Railroad Company by the act of July 2, 1864.

The third section of that act contains the usual granting words: "That there be, and hereby is, granted to the 'Northern Pacific Railroad Company,' its successors and assigns," every alternate section of public land, not mineral, designated by odd numbers, on each side of the line of the railroad when definitely fixed.

It has been decided many times that such grants are *in. præsenti*, and take effect upon the sections of the land when the road is definitely located, by relation as to the date of the grant. But the survey of the land is reserved to the Government (section 6); in other words, the identification of the sections—whether odd or even—is reserved to the Government; and by the act of July 15, 1870, making appropriations for the sundry civil expenses of the Government for the year ending June 30, 1871, it was provided, in regard to the grant to the Northern Pacific Railroad Company, that the cost of surveying must be paid by the company, and no conveyance should be made of the lands until such cost be paid. On account of that provision it was held in *Northern Pacific Railroad Company* v. *Traill County*, 115 U. S. 600, that the land of a railroad company was not subject to taxation. It was said, "to secure the payment of those expenses, it (the Government) decided to retain the legal title in its own hands until they were paid." See also *New Orleans Pacific Railway Co.* v. *United States*, 124 U. S. 124. The equitable title becomes a legal title only upon the identification of the granted sections. *Deseret Salt Co.* v. *Tarpey*, 142 U. S. 241. As expressed in *Leavenworth &c. Railroad Co.* v. *United States*, 92 U. S. 733, 741, "They" (the words "there be and is hereby granted") "vest a present title, . . . though a survey of the lands and a location of the road are necessary to give precision to it, and attach it to any particular tract." The right of survey is in the United States. It was error, therefore, in the trial court to admit the survey made by Ashley. It was also error to instruct the jury to return a verdict for the defendants. Until the identification of the even and odd-numbered sections the

United States retained a special property, at least, in the timber growing in the township; and this was sufficient to enable it to recover the value of the timber cut and removed by the defendants. A contrary conclusion would impair the Government's right of survey and force it into controversies over surveys made by the railroad or its grantees. It would enable the railroad company or its grantees to despoil the lands of their timber and leave them denuded, and, may be worthless, to the Government. Indeed it would reverse the statutory grant of powers and transfer the location of the sections from the Government to the railroad company. The extent and the effect of the power of the Government to make its own surveys is expressed and illustrated in the following cases: *Maguire* v. *Tyler*, 8 Wall. 650; *Cragin* v. *Powell*, 128 U. S. 691; *United States* v. *McLaughlin*, 127 U. S. 428; *Blake* v. *Doherty*, 5 Wheat. 358; *Central Pacific Railroad Co.* v. *Nevada*, 162 U. S. 512; *United States* v. *Hanson*, 16 Pet. 196; *Les Bois* v. *Bramell*, 4 How. 449; *Mackey* v. *Dillon*, 4 How. 421; *Glenn* v. *United States*, 13 How. 250; *Smith* v. *United States*, 10 Pet. 326.

There is nothing in *Northern Pacific Railroad Company* v. *Hussey*, 61 Fed. Rep. 231, which militates with these views. In that case relief was granted by injunction against a trespasser upon unsurveyed land at the suit of the railway company, its contingent interest being held sufficient for that purpose. The paramount control and property in the United States was not in question.

We, therefore, answer the first and the third question certified by the Circuit Court of Appeals in the affirmative.

MR. JUSTICE BREWER concurs in the result.