CLEMMONS, RESPONDENT, *v.* GILLETTE ET AL., APPELLANTS.

(No. 2,236.)

(Submitted November 27, 1905.  Decided December 18, 1905.)

*Public Lands—Unlawful Fencing—Trespasses— Injunction— Unsurveyed School Lands—Leasing by State.*

Public Lands—Unlawful Fencing—Trespassers—Injunction.
   1.  By unlawfully enclosing portions of the public domain, a person acquires no such right therein as will enable him to protect his possession against the trespasses of another person, by invoking the injunctive power of a court of equity.

School Lands—Leasing by State Prior to Survey—Rights of Lessee.
   2.  *Obiter:*  The state acquires no such right, under its grant of lands from the United States government in aid of common schools, as will enable it, prior to the official survey by the United States and approval of the plat by the commissioner of the general land office, to lease the lands so granted, and thereby give to a citizen of the state an exclusive right to the use and enjoyment of such lands.

Public Lands—Unlawful Fencing—Injunction.
   3.  Since a person who unlawfully fences a portion of the public domain, thus having only a tortious possession, cannot maintain an action against another for depasturing such land, he cannot have incidental relief, by way of injunction, to restrain the latter from continuing to depasture the land.

*Appeal from District Court, Lewis & Clark County; J. M. Clements, Judge.*

ACTION by William Clemmons against Warren C. Gillette and George K. Reeder.  From an order of the district court refusing to dissolve an injunction *pendente lite,* defendants appeal.  Reversed.

*Mr. James Donovan,* for Respondent.

In the matter of a motion to dissolve an injunction the moving party takes the burden of proof.  He is the actor and must make an affirmative showing on his motion.  A motion to dissolve an injunction, when the only question involved is a question of law, is rarely, if ever, entertained by the court, for the reason that the same question could be raised by a demurrer to the petition, and it involves purely a question of law, whereas

motions to dissolve injunctions always involve a question of fact. (High on Injunctions, sec. 1470.)

We concede that the land is unsurveyed; we concede that the state could not pass legal title to this land as long as it is unsurveyed; but we do maintain that when the section is so segregated as that it can be identified, the state has a right to grant a permit to occupy said land, and when it grants such a permit to occupy such land and the occupant takes possession of it and improves it, and fences it, he is then in such a possessory right of the land as will authorize him to institute a suit against anyone trespassing upon it; otherwise a person locating upon a piece of government land which is unsurveyed, and having put improvements upon it, and fenced it, and made it productive, is liable to have it taken away from him by force simply upon the theory that might is right, and can be despoiled of his home and improvements; the same may be run over by sheep and cattle, and yet, because it is unsurveyed land, he is absolutely without a remedy; his property may be destroyed and he may be put to irreparable injury, and yet, if the position of the appellants is good, he is absolutely without recourse for the wrongs committed. Such certainly is not the law, never has been, and, we trust, never will be.

In the Session Laws of 1895 there is an Act which provides that anyone who has put improvements upon land which turns out to be state land, or upon section 16 or 36 when unsurveyed, and when surveyed patent issues to the state, the state recognizes their prior right, and will grant to them the right to continue thereon; or in case other than the person putting such improvements on said land is deprived of the same thereafter by others bidding higher than they for the possession of said land, the state adjudicates the improvements and pays over to such person the cost of such improvements; or a stranger may bid as high as he pleases for a permit or lease of such lands and then the occupant may retain the same under a permit at the price bid by the stranger. (Pol. Code, sec. 2339.)

*Messrs. Walsh & Newman,* for Appellants.

The land in question is unsurveyed and a part of the public domain. Until the land is surveyed and the lines created, designating the sections, the state has not authority to lease or otherwise dispose of the land. It is held that the actual survey of the lands is necessary to determine their location, that the lines thereof are then created and not established as something theretofore existing. (*Robinson* v. *Forest,* 29 Cal. 325; *Medley* v. *Robinson,* 55 Cal. 398; *Finney* v. *Berger,* 50 Cal. 248; *United States* v. *Montana L. & M. Co.,* 196 U. S. 573, 25 Sup. Ct. 369, 49 L. Ed. 604; *United States* v. *Birdseye,* 137 Fed. 516; *Central Pac. R. R. Co.* v. *Nevada,* 162 U. S. 512, 16 Sup. Ct. 885, 40 L. Ed. 1057; *State* v. *Central Pacific R. R. Co.;* 21 Nev. 94, 25 Pac. 442; *Buttz* v. *Northern Pacific Ry. Co.,* 119 U. S. 66, 7 Sup. Ct. 100, 30 L. Ed. 334; *Wisconsin Cent. Ry. Co.* v. *Price Co.,* 133 U. S. 509, 10 Sup. Ct. 341, 33 L. Ed. 694; *Cragin* v. *Powell,* 128 U. S. 691, 9 Sup. Ct. 203, 32 L. Ed. 566; 20th Opinions of Attorney General U. S., 542; *Waterman* v. *Smith,* 13 Cal. 373, 416; *State* v. *Central Pac. R. R. Co.,* 21 Nev. 260, 30 Pac. 689; *Middleton* v. *Low,* 30 Cal. 605; *Mahoney* v. *Van Winkle,* 33 Cal. 448, 458; *Hogaboom* v. *Eberhardt,* 58 Cal. 233; *Sherman* v. *Buick,* 45 Cal. 656, 668; *Chapman* v. *Pollack,* 70 Cal. 487, 496; *Hughes* v. *Wheeler,* 76 Cal. 233, 18 Pac. 386; *Buchanan* v. *Nagle,* 88 Cal. 593, 26 Pac. 512; *Schlosser* v. *Hemphil,* 118 Iowa, 452, 90 N. W. 842; *Illinois Steel Co.* v. *Budziz,* 115 Wis. 68, 90 N. W. 1019; *Prentice* v. *Miller,* 82 Cal. 570, 23 Pac. 189; *Linn* v. *Scott,* 3 Tex. 67.)

Counsel mentions Political Code, section 2339. It is sufficient to say, in reply, that the state has no authority to give any person the right to fence the unsurveyed public domain. The United States government alone has the right to dispose of the public lands. Until they are surveyed, the title remains in the government, and the state could not interfere with the United States government's right of possession, or give any person the right to enclose or trespass upon the land.

MR. CHIEF JUSTICE BRANTLY delivered the opinion of the court.

This cause is before this court on appeal from an order of the district court of Lewis and Clark county, refusing to dissolve an injunction *pendente lite.* The writ was issued upon the verified complaint alone, which states three causes of action, namely, for a trespass alleged to have been committed by the defendants in the summer of 1903; for a like trespass committed in the winter of 1903 and 1904; and for an injunction to restrain further trespasses, which it is alleged are threatened, until the rights of the parties may be finally adjudged.

The plaintiff in his third cause of action alleges, in substance, that on or about January 1, 1903, he secured from the state of Montana, through the officers of its land department, a lease of section 16, township 16 north of range 3 west, in Lewis and Clark county; that he paid to the state the annual rental therefor, and went into the actual and peaceable possession thereof; that he is now in possession and is, and has been, entitled to such possession since the date mentioned; that within the past thirty days, the plaintiff being in the actual and peaceable possession as aforesaid, the defendants have cut the wire fence erected by plaintiff enclosing said land, have torn down the gates leading to the same, and have removed the lower wire of the fence for the purpose of driving their sheep thereon, and are about to take possession of the land for the season of 1905, and to depasture the same with their sheep; that the defendants, as plaintiff is informed and believes, are insolvent and unable to respond in damages; that the plaintiff has arranged to graze on the said land, for the year 1905, registered cattle and standard bred horses; that he has no other place where he can graze the said cattle and horses; that they cannot be turned out upon the open range without coming in contact with ordinary range stock; that if he is compelled by the action of defendants to turn them upon the open range, it will impair their value and usefulness for breeding purposes for the season of 1905; and that, if the defendants are allowed to continue their

trespasses in breaking down the enclosure aforesaid, the land of the plaintiff will be depastured and the plaintiff will be compelled to allow his said stock to run at large upon the common range, at a loss to him of from $4,000 to $5,000.

The complaint was filed and the injunction issued on June 20, 1905. On July 22, 1905, the court heard the motion of defendants for a dissolution of the writ. It was based upon the ground, among others, that the plaintiff had no interest in the lands and premises described in the complaint. The defendants filed a demurrer to the complaint. The motion was heard upon the complaint, affidavits and documentary evidence, the allegations of the complaint being admitted, except that the defendants are insolvent. This is controverted. After consideration of the evidence submitted, the motion was denied. The evidence showed that the lands in controversy are a part of the unsurveyed public domain; that on or about January 1, 1903, the plaintiff, having obtained an alleged lease of them from the register of the state land office, at once entered into possession and erected a four-wire fence, enclosing the lands for the purpose of pasturing the stock mentioned in the complaint; that his lease was renewed for the year 1904, but not for the year 1905, because such renewal, though requested by plaintiff, was refused; and that plaintiff has no other right to the possession than such as he obtained by virtue of his enclosure made under the alleged lease from the state of Montana for the years 1903 and 1904.

The question presented for determination therefore is: Whether a person, by enclosing portions of the public domain, thereby acquires such a right therein as will enable him to protect his possession against repeated trespasses thereon by other persons having an equal right to the use and enjoyment thereof. Incidentally, also, arises the question whether the state acquires such a right, under its grant from the United States government of lands in aid of common schools, as to enable it, prior to the official survey by the United States, and the approval of the plat by the commissioner of the land office of the United States, to lease the lands so granted, and thus give a

right to a citizen of the state to the use and enjoyment thereof, to the exclusion of other citizens.

The question of the right of the state to make sales or valid leases of lands granted to it for school purposes by the United States, prior to the official survey thereof, is referred to as incidental, because the respondent does not, in this court, rely, except incidentally, upon a lease from the state for the protection of his alleged right to the exclusive use of the lands in controversy. He relies mainly upon his actual, peaceable possession of the land as a part of the public domain. He concedes that it is unsurveyed and that, until it is surveyed, the state has no title which it may convey; and this concession we think properly made. For it seems to be the rule, applicable to such grants, that, though they operate for some purposes as grants *in praesenti*, conveying the fee, yet, until the official survey is made and the plat has been approved by the federal authorities, the grant is not effective to vest title to any specific portion of the land described by the designation of section numbers only. (*Middleton* v. *Low*, 30 Cal. 596; *Medley* v. *Robertson et al.*, 55 Cal. 396; *Linn* v. *Scott*, 3 Tex. 67; *United States* v. *Montana L. & M. Co.*, 196 U. S. 573, 25 Sup. Ct. 367, 49 L. Ed. 604.) Even a partial survey of the particular section is not sufficient to identify it. (*United States* v. *Birdseye*, 137 Fed. 516.) The reason of the rule is that, until the subject of the grant is identified, there is no particular portion of the great body of lands in which it is included to which the state may assert title, or over which it can exercise exclusive right. The concession logically carries with it the further concession that, for the same reason, the state may not carve out of the subject of the grant a less estate than the fee and convey that. In other words, if it cannot, for the reasons stated, convey the fee, it may not for the same reason grant a lease.

So far as we are aware, the state has never by any legislation assumed, or attempted to assume, control of unsurveyed school lands. So we are relieved of the necessity of discussing further any right of the plaintiff founded upon a lease from the state;

for, though the respondent contends that even if the state cannot convey title, yet, since he went into possession and erected his enclosure under a lease which the state assumed to execute, he is in possession under color of title, it is apparent that this lease could have no efficiency whatever as a protection for his unlawful occupation.

We therefore pass to the question presented for decision, to-wit: May one citizen unlawfully enclose a portion of the public domain and protect his possession, thus acquired and held against the trespasses of another citizen who also has right of entry thereon, by invoking the injunctive power of a court of equity? That the enclosure of the plaintiff is violative of the statute of the United States prohibiting the fencing of public land is clear. Congress has declared unlawful all enclosures of any public lands, in any state or territory, made or maintained by any person, party, association or corporation, without color of title, made or acquired in good faith, or an asserted right thereto, by or under claim made in good faith with a view to entry thereof at the proper land office under the laws of the United States. (Act of February 25, 1885, c. 149; U. S. Comp. Stats. (1901), p. 1524.) The violation of this prohibition is made a misdemeanor, for which severe penalties are exacted. (Id.)

It is practically admitted that the plaintiff has no foundation for his claim to the land in controversy other than his enclosure; nor is it asserted or proved that he expects or intends to acquire title to the land within it from the United States. Indeed, we think it may be assumed that he cannot do so, for the area enclosed cannot be acquired by a single citizen under any provision of the laws of the United States. So he stands before a court of conscience, asserting that he is a trespasser and misdemeanant, without right of possession or color of title, and without hope of acquiring any, and demands that it use its power to aid him in maintaining his unlawful course, and that, too, against a citizen who has the same right of entry that he has himself. No case has been called to our attention in which a

court has used its power for this purpose; and it seems to us that every principle of justice is against it.

The action was not brought for damages for the destruction of the fence or other improvements, but for the depasturing of the land and the consequential injury wrought by plaintiff's being compelled to allow his standard bred stock to run at large upon the common range. The purpose for which the injunction is sought is to prevent further injury of the same kind. The United States government has for many years encouraged its citizens in this western country to use the public domain to pasture their flocks and herds. So long has this condition of affairs prevailed, that it may be said that the government has granted to each citizen a license to go upon and use these pastures. (*Buford* v. *Houtz,* 133 U. S. 320, 10 Sup. Ct. 305, 33 L. Ed. 618.) No citizen, then, has a right to take away or destroy or limit this privilege, and if he does so—as plaintiff has done in this case—he should not be heard by a court of equity to allege his wrong as a reason why a court of equity should protect him.

The cases cited by plaintiff are not in point. In *Monroe* v. *Cannon,* 24 Mont. 316, 81 Am. St. Rep. 439, 61 Pac. 863, this court considered the rights of citizens under the fencing law of this state. The question decided was whether, under the statute (Pol. Code, sec. 3258), one citizen is at liberty to drive his stock upon the land of another and depasture it, though it is not enclosed by a legal fence, as provided by section 3250. It was held that when one person knowingly and willfully appropriates another's land in this way, though it be not fenced at all, he is liable for the damages sustained by the owner. It will be noted that the plaintiff in that case was admittedly the owner of the land in controversy, and that the defendant, knowing this fact, caused his sheep to be herded thereon and depastured it. And so with the other cases cited; none of them recognize the right of one person to sue and recover for damages for injury by others to the lands claimed by him, where such claim is not founded upon some color of title under the laws of the United States, or a settlement with *bona fide* intention to acquire title.

Plaintiff contends that, since he is in the actual, peaceable possession, and the federal government makes no complaint, he is, as against the defendants, the owner of the fee, or, at least, entitled to maintain his possession. He says that the courts will not sanction the enforcement of individual rights by violence, or look with favor upon a citizen who assumes to take the law into his own hands, and, by mere might or power, do what he should invoke the law to do for him; for this course would encourage violence and crime. This is conceded. What we here say has no application to actions at law for injuries to property belonging to the plaintiff; nor to summary actions to recover possession of real estate, the actual, peaceable possession of which is taken or detained from the plaintiff by force accompanied by circumstances of terror, authorized by statute to prevent breaches of the peace. In such cases the title to land is not involved. We think, however, different principles should apply where the plaintiff seeks to recover for damage to land to which he shows he has no other right but a tortious possession. The proprietary title to the public lands is in the United States, and it alone can maintain an action for injury to them. If plaintiff could maintain this action for depasturing this land, he could maintain one for the cutting of timber thereon, or removal of mineral therefrom, upon the strength of his enclosure alone. That he can maintain an action for either of the latter injuries, no one will claim. If the action may not be maintained for the depasturing of the land, then it must follow that the plaintiff cannot have incidental relief by way of injunction.

The order is reversed.

*Reversed.*

MR. JUSTICE HOLLOWAY concurs.

MR. JUSTICE MILBURN: I concur in the above opinion. Nothing therein contained should be considered as implying at all that the state of Montana has not some property interest in sections 16 and 36 of the unsurveyed government lands. I do not think that the opinion is intended to convey an idea that the

state has no interest, but I think it would be better to say so in plain language.

In 1895, at the time the Codes were passed, it appears to me certain that the Code Commissioners, as well as the legislature, understood that the state had some interest in these sections when unsurveyed, for they made provision in section 3489 of the Political Code (section 2339, same Code, as submitted by the Commissioners), for the benefit of persons desiring to purchase such lands, who had "made improvements thereon prior to March 6, 1891, if the land was surveyed at that time, or if unsurveyed, then prior to the survey." Such legislation certainly was an inducement, if not an invitation, to people to settle upon unsurveyed school lands; and it is hard to suppose that the commissioners and the legislature would intentionally invite or induce a citizen to violate any law of the United States. This section was repealed in 1899, and is now only worth mentioning for what it is worth as going to show that this question of the state having some interest in unsurveyed school lands, has not always been understood to be entirely settled in favor of the United States and against the people of this state.