(March 16, 1911.)

AZCUENAGA BROS. LIVESTOCK AND LAND CO., a Corporation, Respondent, v. MIGUEL CORTA, Appellant.

[115 Pac. 18.]

School Lands—Lessee of School Lands—Identification of School Lands—Approval of Public Survey—Trespassers on School Lands.

(Syllabus by the court.)

1.   Until the government causes the public domain to be surveyed, the state or its lessee or grantee has no method of identifying sections 16 and 36 granted to the state by the admission bill for school purposes.

2.   Proof of a private survey is not admissible to identify school lands granted to the state by the government, but the government has reserved to itself the right to control the surveys of the public domain, and to furnish the means and method of identification of school sections, and until the government causes a survey to be made, there is no competent and legal proof that can be adduced which will identify such sections.

3.   Where the government has caused a survey to be made and by such survey the identity of a school section is established, the state has such an interest and equity in the property as to enable it to maintain an action to enjoin and restrain trespassers from entering upon the property and committing waste, and this is especially true where such trespasser in no way connects himself with the government or the title to the land or shows that he has any right to acquire title to the land under any of the laws of the United States.

4.   Where the government has caused school lands to be surveyed, the evidence of identification is competent and sufficient,

even though the survey has not been formally approved and accepted.

APPEAL from the District Court of the Seventh Judicial District, for Owyhee County. Hon. Ed. L. Bryan, Judge.

Action by plaintiff for injunction to restrain trespass and waste. Judgment for plaintiff and defendant appealed. *Affirmed.*

N. M. Ruick, D. A. Dunning and B. W. Oppenheim, for Appellant.

A state, under its school land grant, takes no vested interest or title to any particular land until it is identified by survey, and prior to such identification the grant, as to any particular tract, may be wholly defeated by the United States and the lands otherwise disposed of, in which event the state's remedy is to select lieu lands. (*South Dakota v. Riley*, 34 L. D. 657; *South Dakota v. Delicate*, 34 L. D. 717; *Black Hills National Forest*, 37 L. D. 469.)

Irrespective of the question whether or not a grant of public lands is *in praesenti*, it is the uniform holding of the courts that such grant is ineffective to vest title to any particular land prior to official survey. This is true not only of grants in aid of railroads, but of school land grants to states. (*Clemmons v. Gillette*, 33 Mont. 321, 114 Am. St. 814, 83 Pac. 879; *Gaines v. Nicholson*, 9 How. (U. S.) 356, 365, 13 L. ed. 172; *Kissell v. St. Louis Public Schools*, 18 How. 19, 25, 15 L. ed. 324; *Cooper v. Roberts*, 18 How. 173, 179, 15 L. ed. 338.)

The cases of *Minn. v. Hitchcock*, 185 U. S. 373, 22 Sup. Ct. 650, 46 L. ed. 954, and *Haydenfelt v. Daney*, 93 U. S. 634, 23 L. ed. 995, construed with the cases heretofore cited, are decisive of the question in the case at bar. In both decisions emphasis is laid, in the interpretation of a school land grant, upon the policy of Congress in always providing for lieu land selections, thereby recognizing the possibility of other disposition of the land prior to survey.

The state cannot acquire lands in sections 16 and 36 prior to survey, and a purchaser from the state takes no title. The survey must be under the authority of the government. There is no such tract of land as sections 16 and 36 until it has been located by an approved survey. (*Bullock v. Rouse,* 81 Cal. 590, 22 Pac. 919; *Grogan v. Knight,* 27 Cal. 522; *Robinson v. Forrest,* 29 Cal. 325; *Middleton v. Low,* 30 Cal. 605; *Powers v. Jackson,* 50 Cal. 429; *Central Pac. Ry. v. Nev.,* 162 U. S. 512, 524, 16 Sup. Ct. 885, 40 L. ed. 1057; *Layton v. Farrell,* 11 Nev. 451; *Papin v. Ryan,* 32 Mo. 21; *Spraybery v. State,* 62 Ala. 461; *Ferry v. Street,* 4 Utah, 521, 7 Pac. 712, 11 Pac. 571.)

The uniform ruling of the land department has been that the date of a township survey is not fixed by the date of the work in the field, but by the approval of the plat by the commissioner of the general land office. (*So. Pac. R. R. Co. v. Burlingame,* 5 L. D. 415; *Cal. v. Wright,* 24 L. D. 54; *In re Hill,* 36 L. D. 158.)

Not only must the official plat of survey be approved by the commissioner, and transmitted to the district land office before the lands are considered surveyed, but they are not open to entry, selection, or other form of disposal until notice fixing the date of official filing of plat has first been given as prescribed in the departmental regulations. (*Cal. v. Koontz,* 33 L. D. 643.)

Public lands are not surveyed until the approved plat of survey thereof is officially filed in the local land office. (*Anderson v. Minn,* 37 L. D. 390; *In re Hyde & Co.,* 37 L. D. 164; *U. S. v. Curtner,* 38 Fed. 1.)

The lands are not deemed to be surveyed before the plat of survey of the township has been approved by the United States surveyor general. (*Medley v. Robertson* (1880), 55 Cal. 396, overruling *Oakley v. Stuart,* 52 Cal: 522.)

Hawley, Puckett & Hawley, for Respondent.

Under the decision of this court in *Balderston v. Brady,* 17 Ida. 567, 107 Pac. 493, and upon general principles, by

the terms of the bill admitting Idaho as a state, the school lands were made as a grant, dating from that time. While upon unsurveyed lands it might be impossible to identify the particular sections owned by the state, still when it becomes possible so to identify such sections, the title thereto vested in the state. The school section at issue here has been actually surveyed, but the survey has not yet been formally accepted; the land in question has thus been identified, and the only point that could be urged by defendant against the contention of respondent in the complaint is that a mistake was made in the survey, and that the lands in question are not part of section 16, but are part of some other section not granted to the state. This contention is not sustained, by the fact that the state authorities assumed control of the land and two years ago leased it to the respondent. While the action of the state officers is not binding upon the court, still the fact that they did so act certainly must have great weight.

We ask under what principle of law it can be said that if the state does so own such lands by reason of the grant, made by the general government, that it has not the power, when those lands can be identified, of disposing of them, or at least leasing them to individuals.

AILSHIE, Presiding J.—This action was instituted by the plaintiff to enjoin the defendant from trespassing on section 16, township 8 south, of range 5 west, Boise Meridian, and for damages for his repeated acts of trespass. The complaint alleged that plaintiff was the lessee of the state of this section of land. A temporary injunction was issued, and the case was thereafter submitted to the court on the pleadings and stipulation as to the facts concerning the title and right of possession to the land. Judgment was entered in favor of the plaintiff, and the defendant appealed.

It seems that the government caused a survey to be made covering this section of land, and that after the survey and prior to the formal approval of the survey by the general.

land office, the state leased section 16 to the respondent company, and thereafter and while respondent was in possession of the land grazing the same with its livestock, the appellant entered upon the land with his band of sheep and occupied and grazed the same. The only authority under which the appellant claims the right of entering upon said land and occupying it is the general sufferance, permission or license of the United States to graze livestock on the public domain. It is admitted by appellant that he knew the lands had been surveyed and that according to such survey this was section 16 of the township. He also admits that he was aware of the occupancy of the respondent at the time he entered upon the land with his livestock.

Appellant has gone into the question at great length of the state's title to sections 16 and 36, granted to the state by the general government for common school purposes. He has argued and cited many authorities which he insists support his position that the state acquires no interest or right or title to school sections until after the survey has been made by the government and formally accepted and approved by the general land office. As we view the matter, however, it is not so much a question in this case as to when the absolute title or fee vests in the state, as it is a matter of proof of the state's interest or equity in and to the identical tract of land. The government seems to have reserved to itself the implied power to control the public surveys and consequently has reserved in itself the means of identification of sections 16 and 36 which were granted to the state by the Admission Bill for school purposes. When the respondent in this case undertook to prove its case and show as lessee of the state that the state had a right to lease this land, it was necessary to identify the land by means of a *government survey*. No *private survey* could establish that fact or identify the tract of land.

The supreme court of the United States in *United States v. Montana Lumber & Mfg. Co.*, 196 U. S. 573, 25 Sup. Ct. 367, 49 L. ed. 604, held that proof of a *private survey* was not

admissible to show that timber cut was taken from an odd section which fell within the limits of the Northern Pacific Railroad grant. In that case, three questions were certified by the circuit court of appeals for the ninth circuit up to the supreme court of the United States, and that court answered the first and third questions in the affirmative. Those were purely and solely questions as to the admissibility of evidence. That case was subsequently followed by the circuit court of appeals in *United States v. Birdseye,* 137 Fed. 516, 70 C. C. A. 100, and also in *Clemmons v. Gillette,* 33 Mont. 321, 114 Am. St. 814, 83 Pac. 879. So far as we are aware, it has never been directly held by the supreme court of the United States, or any other court, that the state has absolutely no right or interest in school sections until after the official survey is made; but it has rather been held that there is no means of proof as to the particular tract or body of land which constitutes sections 16 and 36, and that therefore there is no legal means of identification of the land until after the official survey is made. That is what we understand to be held by the foregoing authorities, and, indeed, we so announced our understanding of the rule in *Balderston v. Brady,* 18 Ida. 238, 108 Pac. 742.

On the other hand, the supreme court of the United States and the inferior federal courts have almost uniformly recognized an inchoate right or an equitable title as existing in the state to these sections at all times prior to the survey, and that this right is subject to be defeated on the one hand, or vested absolutely and in fee simple on the other hand, according to the condition and occupation of the property at the time the survey is made. A homesteader, however, could not acquire any interest in the property after the survey is actually made on the ground, although the survey might not be actually accepted and approved for years thereafter.

The appellant in this case fails to connect himself with the government in any way, whereby he could acquire any title or right or interest in and to the property from the

government. According to his own showing, he is at the best a mere trespasser on the land or possibly a temporary occupant by sufferance of the government, if the government still retains the right to direct the control and occupation of such land. The respondent, on the other hand, shows that it is a lessee from the state. He also shows that the land has been surveyed, and this fact is not established by proofs of a *private survey* but by proofs of a *government survey.* While it appears that this survey has not yet been formally accepted and approved by the department, that fact could not improve appellant's condition or relation to the land, nor could it in any way tend to connect the appellant with the government or its title to the land. While a rejection of the survey and a resurvey by the government showing that this body of land is not in fact section 16 would ultimately defeat the state and incidentally the respondent as its lessee, that would present a condition and state of facts that does not arise in the present case and with which we are not confronted. As between these parties, where the government is asserting no right to the land, we think the state's lessee is clearly entitled to protect its possession and occupancy of the land as against appellant.

This is a much stronger case in its facts than was the case of *Northern Pacific Ry. Co. v. Hussey,* 61 Fed. 231, 9 C. C. A. 463, for the reason that here the land has been surveyed and the grantee's lessee was in possession. In that case the Northern Pacific Ry. Co. was allowed to maintain an action to enjoin trespassers from cutting timber off of land within the limits of the Northern Pacific land grant, even though the land was still unsurveyed. This was done upon the theory that the railroad company had such an interest in the land that it might maintain its action to preserve the property from waste. Justice McKenna presided over the circuit court of appeals as one of the circuit judges at the time the Hussey case was decided. He also wrote the opinion of the supreme court in the case of *United States v. Montana Lbr. & Mfg. Co., supra,* and refers specifically to the Hussey case, and says there is nothing in the Hussey

case which is in conflict with the rule announced by the supreme court in the Montana Lumber & Mfg. Co. case. This furnishes a strong indication as to the view of the supreme court on the question considered in the Hussey case and involved in the case now before us.

No question is raised in this case as to the sufficiency of the facts pleaded to entitle the plaintiff to an injunction except as to the specific question of title above considered. We therefore express no opinion as to the sufficiency of the complaint in other respects to entitle the plaintiff to an injunction in this case.

For the foregoing reasons, the judgment should be *affirmed,* and it is so ordered. Costs awarded in favor of respondent.

Sullivan, J., concurs.

Petition for rehearing denied.