DETERMINED IN THE

# SUPREME COURT

## OF THE STATE OF NEW MEXICO

### . JANUARY TERM, 1918

[No. 2037, April 3, 1918.]

## DALLAS et al. v. SWIGART et al.

### SYLLABUS BY THE COURT.

Sections 6 and 11 of the Enabling Act of New Mexico (Act Cong. June 20, 1910, c. 310, 36 Stat. 557) and Act. Cong. August 18, 1894, c. 301, § 1, 28 Stat. 394 (U. S. Comp. St. 1916, § 4876), interpreted, and held to operate as a present grant to the state of school sections, subject only to identification by survey, whereupon title vested in the state as of the date of the Enabling Act. Under the terms of the Enabling Act, as soon as such lands are surveyed in the field, the state acquires such an interest therein as entitles it to take possession thereof or to lease the same to private persons.

Appeal from District Court, Chaves County; McClure, Judge.

Contest before Commissioner of Public Lands by Harry Dallas and others constituting the partnership of Dallas Bros., against R. E. Swigart and another. From a final judgment of the district court affirming the decision of the Commissioner of Public Lands in favor of contestees, contestants appeal.

R. C. REID, of Roswell, for appellant.

Leases of appellee are void because executed by State and delivered before the land was surveyed or the plat of survey approved by the Surveyor General.

Dallas et al. v. Swigart et al. 24 N. M. 1.

Secs. 15, 6, 11, Enabling Act; Gilson v. Robinson, 7 Pac. 428; Clemmens v. Gillette, 83 Pac. 879; Middleton v. Low, 30 Cal. 596; Tim v. Scott, 3 Tex. 67; U. S. v. Birdsey, 137 Fed. 516; U. S. v. Curtner, 36 Fed. 1; U. S. v. Mont., 196 U. S. 573; Bernard's Heirs v. Ashley's heirs, 18 How. 46; Finney v. Berger, 50 Cal. 248; Medley v. Robertson, 55 Cal. 396; 8 L. D. 540; Finney v. Berger, 50 Cal. 248; Garfield v. Wilson, 74 Cal. 178; Prentice v. Miller, 82 Cal. 572; Baker v. Jamison, 54 Minn. 28; Gains v. Nicholson, 9 How. 364; Campbell v. Dre, 13 How. 244; Kissell v. Pub. Schools, 18 How. 19; Cooper v. Roberts, 18 How. 173; Beecher v. Wetherly, 95 U. S. 517; Frasher v. O'Connor, 115 U. S. 102; McCreary v. Haskell, 119 U. S. 327; Williams v. U. S., 138 U. S. 516; Rule 3, rules State Land Office.

H. M. Dow, of Roswell, for appellee Swigart; C. A. REYNOLDS, of Roswell, for appellee Connor.

State was equitable owner of property.
Skidmore v. Pitts. C. & St. L. Ry. Co., 112 U. S. 33; Olive Land & D. Co. v. Olmsteed, 102 Fed. 568.

A. B. RENEHAN, of Santa Fe, for Land Commissioner.

The grant of designated section by the government was in *praesenti* and authorized the making of the leases.
St. Paul etc. Co. v. N. P. R. R. Co., 139 U. S. 1; Sec. 15, Act establishing the Territory of New Mexico; Sec. 6, Enabling Act; State v. Whitney, (Wash.) 120 Pac., 116; Balderston v. Brady, 107 Pac. 493; rehearing denied, 108 Pac. 742; Hedrick v. Hughes, 82 U. S. 123; Bradley v. Case, 4 Ill. (3 Scam.) 585; Daggett v. Nonewitz, 107 Ind. 276; 7 N. E. 900; State v. Stringfellow, 2 Kans. 263; Regents of State University f. Hart, 7 Minn. 61; (Gil. 45) ; Jones v. Madison County, 72 Miss. 777; 18 So. 87, overruling (1859) ; Hester v. Crisler, 36 Miss. 681.

If the state did not have title sufficient to sustain its leases at the time of execution thereof, it acquired such

title prior to expiration of leases, and title and right thereupon inured to benefit of lessees.

18 Am. & Eng. Ency. L. 608 and ca. ci.; Bigelow on Estoppel (6th ed.) pp. 424, 425; Lanyon Zinc Co. v. Freeman, 68 Kans. 691; 75 Pac. 995.

Estoppel will operate against the state.

Nietos Heirs v. Carpenter, 7 Cal. 527; State v. Ober, 34 La. Ann. 359; Commonwealth v. Heirs of Andre, 3 Pck. 224; State v. Taylor, 28 La. Ann., 460; Commonwealth v. Pejepscut Prop., 10 Mass. 155; Menard v. Massey, 8 How. 313.

Appellants are in no position to urge the propositions. Propositions are moot.

Sec. 5200, Codif. 1915; Aldridge v. Aldridge, N. M. 151, Pac. 314; Costilla Eest. Dev. Co. v. Allen, N. M. 128, Pac. 79; Roswell Nursey Co. v. Mielenz, N. M. 137, Pac. 579; Sandell v. Norment, N. M. 145 Pac. 259; Killough v. Ft. Supply Tel. & Tel. Co., 154 Pac. 1192; Ayer v. Chapman, Ga., 81 S. E. 198.

Offer to contract is continuing offer until withdrawn and same communicated.

9 Cyc. 286.

Only parties to contract have right to question its validity.

Woodruff v. Commissioners, 37 N. E. 732.

### OPINION OF THE COURT.

PARKER, J.—This proceeding originated in the form of a contest before the commissioner of public lands, wherein the validity of leases held by appellees covering certain school sections was attacked, and an appeal was taken from the decision of the commissioner to the district court of Chaves county, and this appeal is now taken from the final judgment of that court. The proceedings are under the authority of section 5247 et seq.,

Code 1915. The district court rendered judgment in favor of the validity of the leases by the commissioner of public lands to the appellees and against the contentions of the contestants, appellants here. It appears that a survey had been made in the field of the lands involved in the controversy and that thereafter the appellees applied to the commissioner of public lands and obtained leases upon certain school sections. At that time the surveys had not been approved by the general land office. The surveys were thereafter approved, and thereafter the appellants applied to the commissioner of public lands for a lease upon the same lands and were refused; the leases of appellees then having run only a portion of the term for which they were given. From this decision, which was affirmed by the district court, this appeal was taken as heretofore pointed out.

Counsel for appellants contend that no title to school sections passes to the state from the United States until after the land is surveyed, and that it is not surveyed land, within the meaning of the Enabling Act, until the survey is approved by the person charged with the duty of making the survey, and that the state cannot sell or lease such lands until it takes title. Appellees contend that the Enabling Act (36 Stat. 557) effected a grant in praesenti to the state of sections 2, 16, 32 and 36 in each township in the state, and that title to said lands thereupon passed to the state as of the date of the Enabling Act, subject only to the subsequent identification thereof by the public surveys. The pertinent provisions of the Enabling Act are as follows:

"Sec. 6. That in addition to sections sixteen and thirty-six, heretofore granted to the territory of New Mexico, sections two and thirty-two in said every township in said proposed state not otherwise appropriated at the date of the passage of this act are hereby granted to the said state for the support of common schools; and where sections two, sixteen, thirty-two and thirty-six, or any parts thereof, are mineral, or have been sold, reserved, or otherwise appropriated or reserved by or under the authority of any act of Congress, or are wanting or fractional in quantity, or where settlement thereon with a view to pre-emption or homestead,

Dallas et al. v. Swigart et al. 24 N. M. 1.

or improvement thereof with a view to desert-land entry has been made heretofore or hereafter, and before the survey thereof in the field the provisions of sections twenty-two hundred and seventy-five and twenty-two hundred and seventy-six of the revised statutes are hereby made applicable thereto and to the selection of lands in lieu thereof to the same extent as if sections two and thirty-two, as well as sections sixteen and thirty-six were mentioned therein."

"Sec. 11. * * *: and after its admission into the union said state may procure public lands of the United States within its boundaries to be surveyed with a view to satisfying any public-land grants made to said state in the same manner prescribed for the procurement of such surveys by Washington, Idaho, and other states by the act of Congress approved August eighteenth, eighteen hundred and ninety-four (twenty-eighth statutes at large, page 394), and the provisions of said act, in so far as they relate to such surveys and the preference right of selection, are hereby extended to the said state of New Mexico."

The provisions of the act of Congress approved August 18, 1894, referred to in section 11, are as follows:

"That it shall be lawful for the Governors of the states of Washington, Idaho, Montana, North Dakota, South Dakota and Wyoming to apply to the Commissioner of the General Land Office for the survey of any township or townships of public land then remaining unsurveyed in any of the several surveying districts, with a view to satisfy the public land grants made by the several acts admitting the said states into the Union to the extent of the full quantity of land called for thereby; and upon the application of said Governors the Commissioner of the General Land Office shall proceed to immediately notify the Surveyor General of the application made by the Governor of any of the said states of the application made for the withdrawal of said lands, and the Surveyor General shall proceed to have the survey or surveys so applied for made, as in the cases of surveys of public lands; and the lands that may be found to fall within the limits of such township or townships, as ascertained by the survey, shall be reserved upon the filing of the application for survey from any adverse appropriation by settlement or otherwise except under rights that may be found to exist of prior inception, for a period to extend from such application for survey until the expiration of sixty days from the date of the filing of the township plat of survey in the proper district land office, during which period of sixty days the state may select any of such lands not embraced in any valid adverse claim, for the satisfaction of such grants, with the condition, however that the Governor of the state, within thirty days from the date of such filing of the application for survey shall cause

a notice to be published, which publication shall be continued for thirty days from the first publication, in some newspaper of general circulation in the vicinity of the lands likely to be embraced in such township or townships, giving notice to all parties interested of the fact of such application for survey and the exclusive right of selection by the state for the aforesaid period of sixty days as herein provided for; and after the expiration of such period of sixty days any lands which may remain unselected by the state, and not otherwise appropriated according to law, shall be subject to disposal under general laws as other public lands." U. S. Comp. St. 1916, § 4876.

A fine discussion of the nature of the grant of school lands to the states is to be found in State v. Whitney, 66 Wash. 473, 120 Pac. 116. The language of the Enabling Act of Washington and of several other states authorized to form state governments at the same time, differs somewhat from our Enabling Act. That act is to be found in 25 Stat. 676. The only difference between that act and our Enabling Act consists in the following provision:

"Such land shall not be subject to pre-emption, homestead entry or any other entry under the land laws of the United States, whether surveyed or unsurveyed, but shall be reserved for school purposes only." Section 11.

Our Enabling Act does not contain this reservation, but provides that the reservation from entry under the general land laws shall come into operation only when the lands are surveyed in the field, whereupon they are withdrawn from entry. This divergence is of no importance under the facts in this case, because before any of the rights of the parties had been initiated these lands had been surveyed in the field. The court traces the history of the acts of Congress granting lands to states beginning with that of Indiana in 1816, and points out the differences in the language used. It is said that prior to the grant to California in 1853 the words of the congressional acts were "shall be granted." In the California, Nevada, and Nebraska acts the words were "shall be and are hereby granted." The words in our Enabling Act are "are hereby granted." The

Washington court held· that the grant to that state was a grant in praesenti, and passed title to the state for the school sections, subject only to identification by survey, whereupon the title, by relation, passed as of the date of the act. The court cites and approves the reasoning of Balderston v. Brady, 17 Idaho, 567, 107 Pac. 493, which construed the Enabling Act of·Idaho to the effect that the grant was a present one and passed title to the state as of the date of the act. In United States v. Southern Pac. R. Co., 146 U. S. 570, 13 Sup. Ct. 152, 36 L. Ed. 1091, a contest arose between the government and the Southern Pacific Railroad Company as to whether certain lands were included within its land grant. There had been in 1886 a grant of land to the Atlantic & Pacific Railroad Company, and the language used in the grant is "that there be, and hereby is, granted." In 1871 a grant in the same terms was made to the Southern Pacific Railroad Company. The lands in question were within the grant or place limits of both the Atlantic & Pacific Railroad Company and the Southern Pacific. Railroad Company at the place where these lines crossed. The grant to the Atlantic & Pacific Company was afterwards forfeited, but at the time the grant was made to the Southern Pacific Company it was in full force. The question was whether the Southern Pacific Company took title under its grant as against the Atlantic & Pacific Company, or whether title had passed from the government to the Atlantic & Pacific Company, so that the Southern Pacific grant did not attach to the same. The court held in an opinion by Mr. Justice Brewer that title to the lands at the date of the grant to the Southern Pacific Company was in the Atlantic & Pacific Company, and that therefore the Southern Pacific Company took nothing under its grant. The court cites and quotes from St. Paul & Pacific R. Co. v. Northern Pacific R. Co., 139 U. S. 1, 11 Sup. Ct. 389, 35 L. Ed. 77, to the effect that such words as were employed in these two granting acts import a transfer of present title, and not a promise to transfer one in the future. The court also

cites and quotes from Missouri, K. & T. R. Co. v. Kansas Pacific R. Co., 97 U. S. 491, 24 L. Ed. 1095, to the effect that it is always to be borne in mind in construing a congressional grant that the act by which it is made is a law as well as a conveyance, and that such effect must be given to it as will carry out the intent of Congress, and that the rules of the common law must yield to the legislative will. In Deseret Salt Co. v. Tarpey, 142 U. S. 241, 12 Sup. Ct. 158, 135 L. Ed. 999, the nature of the grant to the Union Pacific Railroad Company was discussed. The court said:

"Those terms import the transfer of a present title, not one to be made in the future. They are that 'there be, and is hereby, granted' to the company every alternate section of the lands. No partial or limited interest is designated, but the lands themselves are granted, as they are described by the sections mentioned. Whatever interest the United States possessed in the lands was covered by those terms, unless they were qualified by subsequent provisions, a position to be presently considered.

"In a great number of cases grants containing similar terms have been before this court for consideration. They have always received the same construction, that, unless the terms are restricted by other clauses, they import a grant in praesenti, carrying at once the interest of the grantor in the lands described."

In Leavenworth L. & G. Co. v. United States, 92 U. S. 733, 23 L. Ed. 634, the court said:

" 'There be, and is hereby, granted' are words of absolute donation and import a grant in praesenti. This court has held that they can have no other meaning; and the Land Department, on this interpretation of them, has uniformly administered every previous similar grant.  *  *  * They vest a present title in the state of Kansas, though a survey of the lands and a location of the road are necessary to give precision to it, and attach it to any particular tract. The grant then becomes certain and by relation has the same effect upon the selected parcels as if it had specifically described them."

Many other cases in the Supreme Court of the United States are to the same effect, and this may be said to be the uniform holding of that court.

A very late case in the Supreme Court of the United States discusses the nature of grants of this kind. Wisconsin v. Lane, 245 U. S. 427, 38 Sup. Ct. 135, 62 L. Ed. —. In that case the state of Wisconsin claimed title under a school land grant, and sought to enjoin the Secretary of the Interior, and through him the Indian occupants from cutting timber or committing waste thereon. The grant to Wisconsin contained the provision:

"That section 16, in every township of the public lands in said state, and where such section has been sold or otherwise disposed of, other lands equivalent thereto, and as contiguous as may be, shall be granted to said state for the use of schools."

The court in discussing the nature of the grant to Wisconsin said:

"It is evident from a consideration of the terms of Enabling Act, § 7, that Congress did not make an unconditional grant in praesenti to the state of the school sections; the terms of the grant are that the section 'shall be' granted. Moreover, the grant contemplated that Congress might make other disposition of the land. The state of Wisconsin's right to the land in controversy was to be subordinate to such disposition, in which event the state should seek indemnity in other lands for the loss of school sections."

The court follows United States v. Morrison, 240 U. S. 192, 36 Sup. Ct. 326, 60 L. Ed. 599, which deals with a similar grant of lands for school purposes to the state of Oregon, and in which it is said:

"The designation of these sections was a convenient method of devoting a fixed proportion of public lands to school uses, but Congress, in making its compacts with the states, did not undertake to warrant that the designated sections would exist in every township, or that. if existing, the state should·at all events take title to the particular lands found to be therein. Congress did undertake, however, that these sections should be granted unless they had been sold or otherwise disposed of; that is, that on the survey, defining the sections, the title to the lands should pass to the state, provided sale or other disposition had not previously been made, and, if it had been made, that the

state should be entitled to select equivalent land for the described purpose."

The Oregon act contained the words "shall be granted" the same as the Wisconsin act.

In view of these principles, an examination of the Enabling Act convinces us that it was the intention of Congress in enacting the same to make a present grant of the school sections mentioned in the act. Provision is made for the speedy survey of all lands in the state upon the application of the state to satisfy the various land grants contained in the act. The provision is made that as soon as the lands are surveyed in the field they shall be withdrawn from entry under the public land law, and the further provisions of Act Aug. 18, 1894, 28 Stat. 394, above set out, provide for such survey. The conclusion is inevitable that the Enabling Act, construed as a statute, as it must be in this regard, evinces an intention on the part of Congress to pass an immediate title to the state to the school sections, subject only to identification by survey.

It follows that when the school sections in question were surveyed in the field all obstacles to the rights of the state in and to the same were removed, and no third persons could acquire any interest in the same. The only question was between the state and the government of the United States, and the only question in that regard was whether or not they were mineral or nonmineral in character. Counsel for appellants rely upon Middleton v. Low, 30 Cal. 596, 604, and United States v. Montana L. & M. Co., 196 U. S. 573, 25 Sup. Ct. 367, 49 L. Ed. 604. The reasoning of the California court does not commend itself to this court. So far as we are advised, it stands alone in holding that such a grant as the one in question does not pass a present title. In the case of United States v. Montana, etc., Co., supra, the question was whether the United States might recover from a vendee of the Northern Pacific Railway company for timber cut upon lands within the grant limits to that railroad and prior to a survey of the

lands. The court held that, in view of the fact that the railroad must pay the cost of surveying, and no conveyance should be made of the land until such cost should be paid, the title did not pass under that grant until such lands had been surveyed.

Even assuming that the full and complete legal title to school sections did not pass to the state until approval of the surveys made in the field, it nevertheless remains clear from the provisions of the Enabling Act that it was the intention of Congress to pass to the state a present right as against every one else to those school sections as soon as it should apply for a survey thereof and as soon as the same were surveyed in the field. This being so, the state, even if it did not have at the time a complete legal title in the sense that the subject-matter of the grant was fully identified, had such an interest in the school sections as entitled it to possession of the same, and to protect them against trespass or to put private citizens in possession of the same under a lease for such purposes as the lands were suitable to subserve.

The judgment of the lower court will therefore be affirmed; and it is so ordered.

HANNA, C. J., and ROBERTS, J., concur.

### SYLLABUS BY THE COURT